## FREDERICK TRESCA v. JOSEPH H. MADDOX.

Action against the proprietor of a newspaper for damages for a libel.

In actions of this character malice is often implied. At common law, if the words spoken or published are themselves actionable, (as if they import an accusation of an indictable offence,) malicious intent is an inference of law, and therefore needs no proof. In this case malice does not mean a spite against the individual, but *malus animus*, a wanton disposition, grossly negligent of the rights of others.

The defendant had a right to report the fact that the plaintiff had been arrested and held for examination on a particular charge. But he had no right to go beyond this, and assume the guilt of the plaintiff upon an *ex parte* charge, heap accusations of other crimes upon his head without any foundation, and vilify his character, except upon the responsibility of proving the truth of his accusations when sued for libel, and that they were made with good motives and for justifiable ends.

The fact that defendant recanted the charges against the plaintiff the day after they were made was proper to be considered by the jury in estimating damages, but could not exonerate plaintiff entirely.

The satisfaction expressed by plaintiff at the apology and recantation made by defendant was not a waiver of his claim for damages, as it was consistent with a reservation of his right to sue, if he thought proper.

Although the libel was written by one of defendant's employees in the regular course of his employment, yet defendant was responsible, and though wholly without moral turpitude, yet damages could be recovered against him without special proof of the pecuniary amount actually suffered.

In all appealable cases the jury are judges both of the law and fact, but in all cases the Judge may be required by the counsel of either party to charge the jury in writing.

APPEAL from the Fifth District Court of New Orleans, *Augustin*, J. *Rand & Bartlette*, for plaintiff. *Durant & Hornor*, for defendant.

SPOFFORD, J. (MERRICK, C. J., absent.) The defendant has appealed from a judgment for $1000, rendered against him upon the verdict of a jury as damages for the publication of a libel against the plaintiff in the Crescent newspaper.

The plaintiff, captain of a schooner in the Tampa Bay trade, was arrested in New Orleans in July, 1852, and imprisoned upon an affidavit made by a policeman before one of the Recorders, to the effect that he had been informed, and verily believed that the plaintiff, and others on board his schooner, the George Lincoln, were guilty of robbing the dead bodies of certain persons who had been killed by an explosion upon the steamboat St. James, and had been found floating upon the lake.

The defendant, proprietor of the Crescent newspaper, was not the writer, and perhaps was absent at the time. But one of his regular employees, having learned of the arrest of the plaintiff, and read the affidavit made against him,

before any examination was had, wrote and caused to be published in the defendant's paper the exaggerated and inflammatory article which constitutes the libel in question.

This article assumes and proclaims the guilt of the plaintiff, and, going far beyond the affidavit really made, treats of his general character and history as that of a noted criminal. It speaks of his "suspicious-looking schooner known to be manned by some nurslings of crime long marked by the officers of the law," and of her owner, whom the Captain of Police "had known through long years for his piratical inclinings," and adds that "a land and water rat was this skipper of the schooner, and a pet of criminal justice during many a day." *Capt. Tresca* and his crew, described by name, are said to have come into port "flushed with successful booty, and bold through previous immunity," and to have been immediately arrested by the vigilant police; and *Tresca* especially is painted as "a brawny, thick-set, low-browed bandit, and to all appearances,

> ' As mild a mannered man
> As ever scuttled ship or cut a throat.' "

The article created a sensation, as it was probably intended to do. And although it shortly turned out to be wholly unjustifiable and mostly untrue, it is proved to have caused the plaintiff the loss of some freight the next trip of his schooner. Upon the preliminary examination, there appeared to be no evidence to criminate him, and his reputation as an honest and inoffensive citizen was vindicated by subsequent articles in the 'Crescent, written by the employee who had penned the libel.

The answer of the defendant admits that he published the article charged as a libel, and admits that it was false.

By way of defence, there is a denial of malice in the publication; an averment that the records of the Recorder's court, of which it is customary for newspapers to make notes, had misled the defendant; that on discovering the error he had instantly retracted it publicly in his newspaper, and that the petitioner had expressed and confessed himself satisfied with the *amende*.

The first point relied upon by the defendant is, that there was no malice in the publication. No express malice was proved. Indeed it may be assumed that the defendant, when he made the publication, did not know who *Captain Tresca* was, and therefore could have had no special malice against him. But in actions of this character malice is often implied. At common law, if the words spoken or published are in themselves actionable, (as if they import an accusation of an indictable offence,) malicious intent is an inference of law, and therefore needs no proof. 2 Green. Ev., § 418 (4). In this case malice does not mean a spite against the individual, but *malus animus*, a wanton disposition, grossly negligent of the rights of others. We think the jury might properly have inferred such malice under the circumstances of the case. *Cauchoix* v. *Dupuy et als.*, 3 L. 208.

As a chronicler of events that actually occurred, the defendant had a right to report the fact that the plaintiff had been arrested and held for examination on a particular charge. But he had no right to go beyond this, assume the guilt of the plaintiff upon an *ex parte* charge, heap accusations of other crimes upon his head without any foundation, and vilify his character before the public, except upon the responsibility of proving the truth of his accusations when sued for libel. The tenor of the article in this case was to charge the plaintiff with the high crime of piracy. The defendant has not shown that he had any

grounds to suppose such to have been, as charged, the occupation of the plaintiff, or that the charge was made with good motives and for justifiable ends.

The reparation made by recanting the charges the day after they were made, was proper to be considered by the jury in estimating the amount of damages, but could not, as the appellant contends, exonerate him entirely. The injury had been done. *Vox semel missa non revertit.* The slander, circulated by one issue of the paper, could not be wholly obliterated by the recantation in another. All who saw the first may not have seen the last. And it is difficult wholly to restore a reputation thus positively and publicly accused of the highest crimes known to the law.

It is urged that the plaintiff is debarred from a recovery by the expression of his satisfaction at the apology and retraction published by the defendant. This is something like the plea of accord and satisfaction of the common law. 3 Black. Com., p. 16. A bargain of this kind could be enforced under our law, as it is competent for the injured party to release his claim for damages. But it must appear that he has released it, or expressly agreed to waive his action for the consideration named. The proof here wholly fails to sustain the existence of such waiver on the part of the plaintiff, all his expressions being consistent with a reservation of his right to sue if he thought proper.

The defendant took a bill of exceptions to the refusal of the Judge to charge the jury as follows:

"First. If the jury think, from the evidence, that the publication was not made by *Maddox* maliciously, and with moral turpitude, then no verdict of damages can be given without special proof of the pecuniary amount suffered."

The court did not err, because *Maddox*, not making the publication personally, but through one of his employees in the regular course of his employment, for whose act he was legally responsible, might be and was wholly without moral turpitude in the affair, and yet damages could be given without special proof of the pecuniary amount suffered. In estimating damages for offences and *quasi* offences, much discretion is left to the jury.

The second instruction asked and refused was: "That in all cases where the law gives the individual an action of damages, he has the right to take in compensation such satisfaction as may be agreeable to himself, and not forbidden by law; and if the jury think, from the evidence, that the plaintiff, *Tresca*, expressed himself satisfied with the apology and public retraction of the charges made against him, then in law the plaintiff has had reparation for his injury, and is not afterwards entitled to an action of damages."

We think there was no error in refusing this charge, because a bare expression of satisfaction at the apology and recantation would not operate a release of the right of action. The expression might have been made without any intent or agreement of the parties to that effect, and then would not bar the action. We have clearly stated that we think it was made without any such intent or agreement.

The Judge, therefore, ruled correctly, although we think the reason given by him for his ruling was unsatisfactory. He stated that the Act of 29th January, 1847, (Acts, p. 28) declaring that the jury shall be the judge of the law and and the facts in all prosecutions for libel, dispensed him from charging the jury upon the law at all. If this statute refers to civil actions for libel, which seems doubtful, it does not exonerate the Judge from the duty of giving the jury a knowledge of the law applicable to the case. In all cases, civil as well as

criminal, the jury are judges both of the law and the facts. C. P. 520; *Bost-wick* v. *Gasquet*, 10 Rob. 81; *The State* v. *Ballerio*, (ante. p. 81.)

But in all appealable cases the Judge may be required by the counsel of either party to charge the jury in writing. Acts 1855, p, 300; Bull. & Curry's Dig., p. 525.

· In all cases it is his duty to give them a knowledge of the definitions and principles of law applicable to the case. They have the power to disregard his instructions, but in practice they seldom do. They are not presumed to know the law, or to be able to judge unaided between the conflicting doctrines invoked and advocated by counsel. The stability and uniformity of the administration of justice require that a learned and impartial Judge should enlighten jurors as to the rules of law which, in his view, are essential to a just decision of the cause before them.

The exceptions, however, were only taken to the refusal of the Judge to charge as requested. As we find no error in that refusal, it is unnecessary to remand the cause.

Complaint is made of the amount of the verdict. It was not made a ground of the motion for a new trial that the verdict was excessive. Considering the enormity of the libel, the absence of any reasonable justification for it, the excitement it created in the public mind against the plaintiff, the injury done to his feelings and his social position, we do not think we are justified by the precedents in disturbing the verdict. See *Daly* v. *Van Benthuysen*, 3 An. 69.

Judgment affirmed.