166 So.2d 84 (1964)
Nubon FRANCOIS, Plaintiff and Appellant,
v.
CAPITAL CITY PRESS et al., Defendants and Appellees.
No. 1131.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1964.
Rehearing Denied July 15, 1964.
*85 Tate & Tate, by Paul Tate, Mamou, for plaintiff-appellant.
Taylor, Porter, Brooks, Fuller & Phillips, by Frank M. Coates, Jr., Baton Rouge, for defendants-appellees.
Before TATE, SAVOY and HOOD, JJ.
HOOD, Judge.
This is a suit for damages allegedly sustained by plaintiff, Nubon Francois, arising out of the publication of an article in the "Morning Advocate," a Baton Rouge newspaper, which article plaintiff alleges was false and was published with malice. The suit was instituted against Capital City Press and Charles P. Manship, Jr., who are alleged to be the publishers of that newspaper. The defendants filed a motion for summary judgment in their favor. After trial, the motion was granted and summary judgment was rendered by the trial court dismissing plaintiff's suit. Plaintiff has appealed.
*86 The evidence shows that on January 2, 1962, the defendants, as publishers of the Morning Advocate, caused to be published in that newspaper the following news item:
"EIGHTH ARREST IN NARCOTICS RING REPORTED
"OpelousasAn eighth person, identified by state police as a member of a narcotics ring, was arrested early Monday morning at Kenney's Lounge in Eunice, Capt. Lonnie Rogers, commander of Troop K in Opelousas, reported.
"He identified the man as Floyd Fuselier, 37, of Morrow. Fuselier was charged with possession of narcotics, Rogers said.
"The seven others were arrested in a predawn raid Sunday by state and Eunice police. They were: David Warren, Jr., 28, Deweyville, Tex.; Lionel Richard, 30, Ville Platte; Lionel Fuselier, 30, Mamou all charged with possession of narcotics; Nuborn Francois, 33, Eunice, charged with possession of narcotics and contributing to the delinquency of a juvenile; Velma Stanley, 25, Eunice, charged with contributing to the delinquency of a junveile; J. B. DeBlieu, 28, Basile, and Joseph Fontenot, 33, Eunice, charged with possession and sale of narcotics.
"Rogers said LeBleu and Fontenot were arrested at Manuel's truck stop and the others were apprehended at Kenney's Lounge.
"The raid was led by Lt. Francis Fruge, Troop K, and Police Chief Adam Dagle of Eunice. The charges against the eight were filed with Eunice City Judge Nilas Young, Capt. Rogers said." (Emphasis added).
Plaintiff alleges that the portion of this news article "stating the plaintiff had been arrested in a narcotics raid and stating the plaintiff had been charged with possession of narcotics, * * * was false, defamatory, and published with malice," and that as a result of said false and defamatory statements plaintiff has sustained damages.
Defendants admit that the article was published in the Morning Advocate, and they concede that there is a genuine issue of fact as to the truthfulness of the statement in this article that plaintiff was "charged with possession of narcotics." They contend, however, that regardless of whether that statement is or is not true, plaintiff cannot recover damages and defendants are entitled to a summary judgment dismissing this suit because the defendant, Capital City Press, enjoyed a qualified or conditional privilege to report that information. More specifically, defendants allege that "the aforesaid newspaper report was published in good faith based on the Troop K Log Book in the State Police Headquarters located in Opelousas, Louisiana," and that "defendant, Capital City Press, enjoys a qualified or conditional privilege to report the fact of arrest of a citizen, when such fact is set forth in the official record of the arresting authority."
The evidence shows that plaintiff was arrested during the early morning hours on December 31, 1961, one of the arresting officers being Lieutenant Francis Fruge, an officer in Troop K of the Louisiana State Police. Shortly after this arrest was made Lieutenant Fruge reported that fact by radio to State Trooper Floyd Ortego, who was then on duty at the Troop K Headquarters, and Trooper Ortego thereupon made an entry to that effect in a record kept at that headquarters, which record was known as the "Troop K Log Book." The pertinent entry made by Trooper Ortego at page 370 of this Log Book reads:
"12-31-61
4: A.M.
Nubon FrancoisW/M33Eunice Charged
Possession of narcotics & contributing to the delinquency of a juvenile. Placed in jail. Eunice.
 Lt. Fruge."
*87 Mrs. James Bourdier, a local correspondent for Capital City Press, was informed of the arrest by Captain Lonnie Rogers, Commander of Troop K of the State Police, by telephone on the morning after it had been made. The information given to this correspondent by Captain Rogers was obtained from the Troop K Log Book, and Mrs. Bourdier thereupon conveyed the same information by telephone to defendant in Baton Rouge. Mrs. Bourdier testified that she does not know plaintiff at all and that she, as a news correspondent, gets stories to report almost every day from Troop K Headquarters. The article which was published by defendants contains substantially the same information as that shown in the Log Book.
Defendants contend that this "Log Book" is an official or public record upon which the publisher of a newspaper may rely in publishing a news article, and that they accordingly have a qualified privilege to publish any information relating to an arrest which is contained in that record. Plaintiff, on the other hand, contends that the Log Book is not an official record and that defendants are not privileged to publish any information which may be contained in that book regardless of whether that information is or is not true. The first question presented, therefore, is whether that Log Book is an official or public record of Troop K of the Louisiana State Police.
Colonel Thomas D. Burbank, Director of Public Safety and Superintendent of Louisiana State Police, in an affidavit which was filed in evidence at the trial, states that for many years all Troop Headquarters of the State Police have been required to keep current log books regarding the activity and events occurring within their respective jurisdictions; that these log books are paid for and furnished by the State Police to each of the Troop Headquarters; and that these log books contain, among other things, the name of any person arrested and the charge for which each such person was arrested. Colonel Burbank further states that on several occasions in the past, reprimands have been issued for failure to keep adequate log books, and that these log books "are the principal records in Troop Headquarters of what has occurred in the area subject to their respective jurisdictions."
The statements contained in the affidavit of Colonel Burbank relating to the authority for and the use of and methods of keeping log books at Troop Headquarters are supported by the depositions of Lieutenant Fruge and of the Troop Commander, Captain Rogers, although Lieutenant Fruge added that in his opinion the log book was "for our own use," that "it was not an official record," and that it "was no more than private notes and memoranda" made for the use of the troop. But, regardless of the opinions expressed by Lieutenant Fruge, we find no statement of fact by him or by anyone else which contradicts the statements of Colonel Burbank as to how and why the Troop K Log Book was kept and as to its use and purpose. No evidence was offered tending to contradict any of those statements.
In Duplechain v. Houston Fire & Casualty Insurance Company, La.App. 3 Cir., 155 So.2d 459, we pointed out that if the movant for a summary judgment produces convincing proof of the facts upon which the motion is based, and no counter affidavits or other receivable evidence are offered by the opposing party to contradict that proof, then a conclusion may be justified that there is no genuine issue as to the facts so proved, even though allegations to the contrary might be contained in the pleadings or opposing counsel asserts in oral arguments or in his written brief that the facts are different.
In this case we conclude that there is no genuine issue of fact as to the authority for and the purpose of the Troop K Log Book and as to how it was kept and what it contained. The question, therefore, of whether that Log Book is an official or public record under the uncontradicted *88 facts presented here is one of law.
In LSA-R.S. 44:1, public records are defined as follows:
"All records, writings, accounts, letters and letter books, maps, drawings, memoranda and papers, and all copies or duplicates thereof, and all photographs or other similar reproductions of the same, having been used, being in use, or prepared for use in the conduct, transaction or performance of any business, transaction, work, duty or function which was conducted, transacted or performed by or under the authority of the Constitution or the laws of this state, or the ordinances or mandates or orders of any municipal or parish government or officer, or any board or commission or office established or set up by the Constitution or the laws of this state, or concerning or relating to the receipt or payment of any money received or paid by or under the authority of the Constitution or the laws of this state are public records, subject to the provisions of this Chapter except as hereinafter provided."
LSA-R.S. 44:3, also relating to public records, provides that:
"A. This Chapter shall not apply to public records when they are held by any sheriff, district attorney, police officer, investigator or investigating agency of the state as evidence in the investigation or prosecution of a criminal charge, until after the public records have been used in open court or the criminal charge has been finally disposed of. This section shall not be construed as forbidding the officers or agencies to make public anything they are otherwise legally authorized to make public.
"This Chapter shall fully apply to all public records concerning the administration, management, conduct, direction and business of the office or department or force of any sheriff, district attorney, police officer or investigating agency, in every way not in conflict with the special exception of matters concerning or relating to a criminal charge or investigation as specified in this Section."
The evidence shows, we think, that the Troop K Log Book is a record "prepared for use in the conduct, transaction or performance of any * * * duty or function which was conducted, transacted or performed by or under the authority of the Constitution or the laws of this state," all as provided in LSA-R.S. 44:1. The Log Book also is a record "concerning the administration, management, conduct * * * of the office or department or force of any * * * police officer," as provided in LSA-R.S. 44:3. The Troop K Log Book, and particularly that portion of it which contains the entry relating to plaintiff, does not come within the exception provided in LSA-R.S. 44:3(A), because that book and that entry are not held "as evidence in the investigation or prosecution of a criminal charge." In our opinion, therefore, the Troop K Log Book must be classified as a public record under the laws of this State.
On the ground of public policy the law recognizes certain communications as being privileged, and as such not within the rules imposing liability for defamation. A communication may be either (1) absolutely privileged, or (2) only qualifiedly or conditionally privileged. A person may be held' liable in damages for libel or slander even though the communication is qualifiedly or conditionally privileged if it can be shown that he was guilty of actual malice. See 33 Am.Jur., Libel and Slander, Sections 123 to 126, inclusive.
Defendants argue, citing substantial authority therefor, that the publication of information contained in public records and in the proceedings of public bodies, to which records and proceedings everyone has a right of access, is protected by a qualified or conditional privilege. See 53 *89 C.J.S. Libel and Slander § 124, page 203; 132 A.L.R. 495; Terry v. Fellows, 21 La. Ann. 375; Fisk v. Soniat, 33 La.Ann. 1400; Meteye v. Times-Democrat Pub. Co., 47 La.Ann. 824, 17 So. 314; Leininger v. New Orleans Item Pub. Co., 156 La. 1044, 101 So. 411; McClure v. Review Pub. Co., 38 Wash. 160, 80 P. 303; Tilles v. Pulitzer Pub. Co., 241 Mo. 609, 145 S.W. 1143; Begley v. Louisville Times Co., 272 Ky. 805, 115 S.W.2d 345. Under the laws of this State, of course, public records may be examined or copied. LSA-R.S. 44:31.
In the instant suit, however, it is not necessary for us to consider generally the right which a newspaper may or may not have to publish information contained in public records, and we express no opinion on the "broad question of what information contained in public records a newspaper is privileged to publish. The question presented here is whether the defendants were conditionally privileged to publish the information contained in a specific public record, the Troop K Log Book, insofar as that information related solely to the fact that plaintiff was arrested and that he was charged with committing certain offenses.
In Louisiana it has been held that a newspaper has a qualified or conditional privilege to report the fact that a person was arrested and the charges for which he is being held, provided that the report does not assume the guilt of the accused person and is not otherwise defamatory. Tresca v. Maddox, 11 La.Ann. 206; Billet v. Times-Democrat Pub. Co., 107 La. 751, 32 So. 17, 58 L.R.A. 62; Morasca v. Item Co., 126 La. 426, 52 So. 565, 30 L.R.A.,N.S., 315; 33 Am.Jur., Libel and Slander, Section 154.
In Tresca v. Maddox, supra, plaintiff recovered damages because of liberlous statements made by defendant in a newspaper article. In that opinion, however, our Supreme Court said:
"As a chronicler of events that actually occurred, The defendant had a right to report the fact that the plaintiff had been arrested and held for examination on a particular charge. But he had no right to go beyond this, assume the guilt of the plaintiff upon an ex parte charge, heap accusations of other crimes upon his head without any foundation, and vilify his character before the public, except upon the responsibility of proving the truth of his accusations when sued for libel. * * *" (11 La.Ann. 208, Emphasis added).
In Billet v. Times-Democrat Pub. Co., supra, the court said:
"* * * `The weight of authority is in favor of extending the privilege to report of arrests, on information gained from papers on file, so long as such reports do not assume the guilt of the accused person and are not otherwise defamatory.' Newell, Defam. p. 549. So it has been held that a newspaper may report the fact that a person has been arrested and held for examination on a particular charge, but that it has no right to go beyond this and assume the guilt of the person charged. Tresca v. Maddox, 11 La. Ann. 206, 66 Am.Dec. 198; Usher v. Severance, 20 Me. 9, 37 Am.Dec. 33. * * *" (32 So. 21, Emphasis added).
And, in Morasca v. Item Co., supra, it was held that "[w]hile comments should not be made, the arrest of a person and the charge against him may be published."
In the instant suit the article published in the Morning Advocate, insofar as it related to plaintiff, reported merely that plaintiff had been arrested and that he had been charged with committing certain offenses. The report did not assume the guilt of the plaintiff and it was not otherwise defamatory. There can be no question but that defendants enjoyed a qualified or conditional privilege to report the fact that plaintiff was arrested and to *90 list the specific charges for which he was being held. Since there is a genuine issue of fact as to whether plaintiff was actually charged with one of the offenses set out in the Log Book, and reported in the newspaper, we will assume for the purpose of this motion for summary judgment that the statement in both the public record and the newspaper that plaintiff was "charged with possession of narcotics" was untrue. And, we consider the question of whether defendants were protected by this privilege in accurately reporting the information contained in the Troop K Log Book as to the charges preferred against plaintiff, even though that information may be later shown to have been incorrect.
We have already pointed out that the Log Book kept at the Troop K Headquarters is a public record, and that the entries made in that book are the "principal records" of what has occurred in the area subject to that troop's jurisdiction. Captain Rogers, the Troop Commander, apparently relied on information recorded in the Log Book when he informed defendants' news reporter that plaintiff had been arrested and had been charged with possession of narcotics and contributing to the delinquency of a juvenile. We gather from the testimony of Colonel Burbank, Captain Rogers, and Lieutenant Fruge that all members of the troop customarily relied on the information contained in this Log Book to show the names of the officers and troopers who were on duty on each shift at that headquarters, the time and location of any wrecks, and other pertinent information, as well as the name of any persons arrested and the charge for which the arrest was made. There is nothing in the evidence to show that defendants or their agents had any cause to feel that the information contained in that Log Book might be or had ever been incorrect.
We feel that since a newspaper may report the fact that a person was arrested and the charge for which he was arrested, it may rely for such a report upon the principal record kept by the arresting authority, which record is a "public record," to show accurately whether the arrest was made and the specific charges which were being filed against the arrested person. This is particularly true where there has been nothing to indicate to the publisher that such public record may not be reliable. In the instant suit, therefore, we conclude that defendants had the right to rely upon the entry made in the Troop K Log Book relating to plaintiff, and that it was conditionally privileged to publish the information contained in that book relating to the arrest of and charges filed against plaintiff, even though the Log Book may have contained an incorrect statement of the charges for which plaintiff was arrested.
As we have already pointed out, defendants may be responsible in damages for libel even though the publication is conditionally privileged if it can be shown that defendants were guilty of actual malice. In this case plaintiff alleges that the article was published "with malice." At the trial of the motion for summary judgment defendants offered the deposition of Mrs. Bourdier, a news reporter for the Morning Advocate, which shows that she obtained the information of plaintiff's arrest in a routine manner, that she did not know plaintiff, and that the story was reported to her newspaper as any other ordinary news item. Her deposition indicates clearly that neither she nor the defendants were prompted by malice or bad faith in publishing this article. No affidavits, depositions, or evidence of any kind were offered by plaintiff to contradict these statements or to show that there may have been a genuine issue of fact as to whether defendants were motivated by malice. We conclude, therefore, that there is no genuine issue as to the fact that defendants were without malice in publishing this article.
In view of the fact that defendants enjoyed a qualified or conditional privilege to publish the fact that plaintiff was arrested and the charges for which the arrest was made, that they were entitled to rely *91 on the entry made in the Troop K Log Book for the information which was published, and that there was no malice or bad faith on their part, we conclude that the trial judge correctly granted defendants' motion and rendered summary judgment dismissing plaintiff's suit.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffappellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.