459 So.2d 1268 (1984)
Gilbert BURATT
v.
CAPITAL CITY PRESS, INC.
No. 83 CA 1240.
Court of Appeal of Louisiana, First Circuit.
November 20, 1984.
Writ Denied January 14, 1985.
Victor L. Marcello and James Marchand, Donaldsonville, for plaintiff-appellee.
Frank M. Coates, Jr., Baton Rouge, for defendant-appellant.
Before WATKINS, CRAIN and ALFORD, JJ.
CRAIN, Judge.
Defendant, Capital City Press, appeals the judgment of the trial court finding in favor of plaintiff, Gilbert Buratt, in a libel *1269 action arising out of the publication of a newspaper article by defendant.

FACTS
On July 8, 1979, Capital City Press, through its newspaper, The Sunday Advocate, published an article which concerned Gilbert Buratt, who had been a member of the Ascension Parish Police Jury for over 10 years and was then Parish Manager. That article was entitled, "Records Reveal Gifts to Police Jurors". It was prefaced with the words, "`Gestures of Friendship' in Ascension". The article, in pertinent part, states as follows:
Barber also said that his firm was asked to overlay road beds in a subdivision in Galvez owned by Police Juror and Parish Manager Buratt and a partner.
Buratt said that he never developed any property in the area.
Barber said that the company turned down the request since tests showed the road bed was "insufficient for overlay purposes." He said Buratt's unnamed partner later said that he would pay whatever price was necessary since he had been turned down a number of times. He said the work was eventually performed by someone else.
Plaintiff, Gilbert Buratt, subsequently filed suit against Capital City Press seeking to recover damages based on alleged defamation. Defendant filed an exception of no cause of action, which was maintained by the trial court. This court reversed in Buratt v. Capital City Press, 399 So.2d 687 (La.App. 1st Cir.1981), finding that a defamatory implication could be drawn from the words in question and further finding that the petition clearly alleged maliceone of the essential elements of a cause of action for defamation in this case.
Trial was held on January 11, 1983, and, for written reasons assigned, judgment was rendered in plaintiff's favor and against defendant in the sum of $3000 in damages and $1000 in attorney's fees.
From that judgment, Capital City Press appeals, specifying the following as error:
1. The lower court erred in finding the reported fact in question defamatory.
2. The lower court erred in failing to find that the defense of truth applied in this case.
3. The lower court erred, as a matter of law, in holding that the newspaper must report the totality of public records on a subject in order to enjoy any privilege and that any summation of particular public records, even though accurate, subjects the newspaper to damages.
4. The lower court erred in finding "actual malice" on the part of the defendant.

LAW
On May 21, 1979, the Louisiana Supreme Court handed down a decision in the case of Fryar v. Guste, 371 So.2d 742 (La.1979). This case held that certain interviews from the Attorney General's office involving the Ascension Parish Police Jury were public records required to be disclosed by the Attorney General to members of the public, including newspaper reporters. A rehearing was denied on June 25, 1979. The plaintiff in that case, Milford Fryer (Mr. Fryer's name is incorrectly spelled in the Supreme Court case), was, in fact, a newspaper reporter and wished to view these interviews to see whether or not there was anything of public interest that ought to be published. Mr. Fryer and other reporters went to the Attorney General's office shortly after the opinion became final and went over the records. As a result of the inspection of these records, there appeared in The Sunday Advocate of July 8, 1979, four newspaper articles based on the records. All of these articles involve excerpts and summaries of material taken from those statements of the Attorney General's office declared to be public records by the Louisiana Supreme Court. The record is clear that the writers of these articles wrote the articles based on the contents of the public records alone. It is also clear that the articles were not based *1270 on all of the available public records, but only on those selected by the reporters.
Plaintiff objected to the statement in one article that he owned an interest in a subdivision where he asked Paul Barber to overlay the road beds. The trial court found that this statement was indeed untrue and when connected with the headlines of the article was defamatory. The trial court's well-reasoned opinion, utilizing the standards for a defamation action set out by this court in Buratt, supra, is attached to this opinion with our approval.
We conclude after examination of the evidence that the trial judge's findings of fact to which plaintiff objects in his first,[1] second and fourth assignments of error are not manifestly erroneous and should not be disturbed on appeal. Canter v. Koehring Co., 283 So.2d 716 (La.1973). We also find defendant's third assignment of error without merit and adopt the trial judge's written reasons for judgment as our own. We would additionally point out with reference to this assignment of error that the assignment alleges error in a holding of the trial court which we do not find was the trial court's holding. The assignment states that the trial court holds that public records must be reported in their entirety and cannot be summarized even if the summary is accurate. That is not what the trial judge held and that is not what defendant's employees did. The trial judge held that if public records are going to be summarized, the summarization should be based on the entirety of the records available. The summary in this case was not. The summary did not include a summarization of other available records which completely refuted the thesis of the article. The disregard of the other available statements which could also have been summarized without further research or investigation, and which would have changed the whole tenor of the disputed statement in the article with reference to Buratt is what makes this a violation of the New York Times actual malice rule. It is illustrated by the following: The article summarized a statement given the Attorney General by Paul Barber. In the article Barber was summarized as referring to "... a subdivision in Galvez owned by Police Juror and Parish Manager Buratt and a partner" and "Buratt's unnamed partner ...". The unnamed partner was Earl Stafford. His statement was also there with the documents of the Attorney General that had been declared public, and was in fact examined by the same reporters who summarized Barber's statement. It completely refuted ownership of the subdivision by Buratt. Yet it was not summarized or referred to by the reporters.
This is what the trial judge meant by summarizing all available material.[2] *1271 The trial judge did not require investigation, or verification or verbatim reproduction. He simply held that when other information was there and was in fact known by the reporters, they were not justified in omitting that information from the summary simply because it refuted the point they were trying to make. A reckless disregard for the truth or falsity of the material published follows from such action. New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).
Appellee's request for additional attorney's fees on appeal may not be considered by this court, as plaintiff did not appeal or answer the appeal. La.C.C.P. art. 2133, Celestin v. Fireman's Fund Insurance Company, 430 So.2d 1263 (La. App. 1st Cir.1983).
For the foregoing reasons, the judgment of the trial court is affirmed. Appellant is to pay all costs.
AFFIRMED.

APPENDIX

STATE OF LOUISIANA

PARISH OF ASCENSION

23RD JUDICIAL DISTRICT COURT

GILBERT BURATT

VERSUS NO. 26,374

CAPITOL CITY PRESS, INC.
Filed: April 4, 1983

REASONS FOR JUDGMENT
Plaintiff has filed suit to recover damages based upon an alleged defamatory newspaper article published by the defendant.

I.
The first issue this Court must decide is whether the words published by defendant could, in fact, be construed as defamatory.
This Court is in complete agreement with the jurisprudence cited and the decision of the First Circuit Court of Appeals (who stated in their prior decision of this matter when deciding on an exception of no cause of action):
"Appellee contends that the words contained in the body of the news article are not in themselves defamatory. This may be true. However, appellant has alleged in his petition that the headline or title of the article and a preface connect the idea of `gestures of friendship' and `gifts to police jury members' with the statements in the body of the article concerning appellant, and that the overall implication of these statements is defamatory. We agree."
"The statements naturally imply conduct by appellant, which is, at least, an unethical use of his public position, and the possible commission of a crime by him. When taken in their entirety, these words, together with the reasonable inferences to be drawn from them, would tend at the least to deprive appelant, a public official, of the benefit of public confidence and injure him in his occupation."

II.
The second issue this Court must decide is whether the words published by defendant, if defamatory, were in fact truthful.
The evidence presented at the trial of this matter established clearly and without doubt or even contradiction that plaintiff DID NOT in fact have any interest in a subdivision in Galvez or any subdivision anywhere else.

III.
Defendant further alleges as a defense that the article is an accurate report of what is contained in the public records.
This Court is well aware of the provisions of Article 12, Section 3 of the Louisiana Constitution of 1974, and the cases of Bartels v. Roussell, 303 So.2d 833; Francois *1272 v. Capital City Press, 166 So.2d 84; Wilson v. Capital City Press, 315 So.2d 393 and other cases cited by defendant. This Court is not in disagreement with any of the principles set out therein. It is clear that a newspaper does have the right to publish material taken from public records.
The Judge was instructed, some time ago, that it was a basic principle of law that for every right received there was also an attendent obligation. This Court is of the opinion that this is still a valid principle of law and applicable to this case. The evidence herein clearly showed that defendant did use as a source for its article information gathered from the public records; however, the evidence also shows the article did not contain matter quoted verbatim from the public records and so identified but only a summarization of what defendant felt the public records reflected.
It is the opinion of this Court that the right to inspect and use public records has an attendent obligation that any use of said public records must accurately and fairly represent what is contained in the entirety of said public records. It is the considered opinion of this Court that any other holding would be unconscionable.
The evidence presented herein established that although the article itself was written by Milfred Fryer and Roy Pritchford, the inspection of the public records was only partially done by them. The evidence established that Mr. Fryer, Lawrence Albarado and Roy Pritchford (all employees of defendant) divided the documents among themselves and each reviewed only a portion thereof. The article written was based on their separate notes of what each felt was pertinent of that portion they reviewed and copies of some statements they felt important. The evidence is clear that all three of defendant's employees were afforded complete access to the records in question, no time limit for their inspection was given and they were allowed to make copies of whatever they wished.
It is the opinion of this Court that the article does not accurately reflect what is contained in the entirety of these public records. The basic thrust of the article is that a police juror owned a portion of a subdivision and asked as a favor that the roads therein be overlaid. While defendant did print a denial of Mr. Buratt, it did not report that another statement of Mr. Buratt and one given by Earl Stafford (who was named by Mr. Buratt as the owner of the subdivision in his statement copies of which defendants had in their possession) were in those records and that the statement of Mr. Stafford completely supported the statements of plaintiff. It is very interesting that on direct examination defendant's employees testified they did not see or remember Mr. Stafford's statement or Mr. Buratt's second statement but on cross examination when Mr. Roy Pritchford reviewed his notes, these notes contained information that could only have come from Mr. Stafford's statements and/or Mr. Buratt's second statement.
It is the opinion of this Court that the evidence presented establishes that a fair and accurate report of the public records would change the article from Gilbert Buratt attempting to extort favors or "gifts" from a parish contractor (criminal activity) to Gilbert Buratt introducing a constituent to a possible business associate, a completely innocuous activity.

IV.
The next issue is that of whether there existed actual malice on the part of defendant so as to allow plaintiff, a public official, to recover damages for a defamatory statement.
In its prior decision on this matter the First Circuit Court of Appeals again cited the law applicable herein:
"As to the legal issue of malice, our Supreme Court, in Kidder v. Anderson, 354 So.2d 1306 (La.1978), stated:
`A public official may not recover damages for a defamatory statement, even if false, relating to his official conduct "unless he proves that the statement was made with `actual malice'that is, with knowledge that it was false or *1273 with reckless disregard or whether it was false or not." New York Times Company v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964).'"
The evidence presented in this case showed clearly that defendant had knowledge that statements contained in its article might be false. Not only did defendant have plaintiff's denial but other statements were contained in the public records (and known to defendant as shown by the notes introduced into the record) that supported plaintiff's statements. It is very interesting that Mr. Roy Pritchford, defendant's employee who wrote the portion of the article in question, testified that if he had all the statements before him when he wrote the article (statements that his own notes on cross examination show he had reviewed personally) he would have consulted legal counsel before printing the article.
Despite knowledge as reflected by their notes themselves, that certain statements contained in the article might be false all three of defendant's employees testified that they did not make ANY EFFORT WHATSOEVER to determine which of the conflicting statements they reviewed might be true. Not one single person was interviewed, no back up work was done whatsoever, and despite fact that one of the employees testified he had consulted the conveyance records on previous occasions to determine whether plaintiff owned a subdivision, no new effort was made or prior notes reviewed.
The evidence herein established that defendant through it's employees wrote an article based on certain statements contrary to plaintiff's interest and in writing said article simply chose to ignore statements that refuted the statements they were relying upon. An article if based on public records must be reflective of what is contained in the entirety of said public records, not merely that portion which supports one position. To publish an article based on a portion of some public records that supports only one position when those public records themselves also contain other evidence that shows the portion relied upon might be false, without any independent investigation into which portion might be correct, is clearly to publish "with reckless disregard of whether it is false or not" (actual malice).

V.
The issue of damages is all that remains. In a case of this nature the matter of damages is very difficult. The Court is convinced that plaintiff has suffered embarrassment as a result of this article as the newspaper of defendant is distributed widely in the area of plaintiff's residence, however, plaintiff has been re-elected to office and the evidence presented has not proven to this Court's satisfaction whether a decrease in the margin of victory was due to this article, the opponent or other political considerations. Accordingly, plaintiff will be awarded Three Thousand and No/100 ($3,000.00) Dollars as damages and attorney's fees of One Thousand and No/100 ($1,000.00) Dollars under Article 2315.1 of the Louisiana Civil Code and defendant also will be assessed all costs of court.
NOTES
[1] We would note that appellant's reasoning that the material should not be considered defamatory derives from its theory that the statements that plaintiff, as a police juror and parish manager attempted to get a contractor who did business with the parish to overlay a subdivision owned by the juror, admittedly untrue, should not be read in conjunction with the headline under which it appeared. That headline was set up as follows:

"`GESTURES OF FRIENDSHIP' IN ASCENSION
RECORDS REVEAL GIFTS TO POLICE JURY MEMBERS"
We consider this argument without merit. If the material under a headline is not relevant to that headline it shouldn't appear there. Actually, the conclusion is inescapable that the headline is purposely being used to create an inference of wrongdoing from what would otherwise be very weak material. The inference created, as we stated in our original opinion, is that Buratt was guilty of "... at least, an unethical use of his public position, and the possible commission of a crime by him." Buratt, 399 So.2d at 689. This is defamatory.
[2] This fact distinguishes this case from those cited by appellant. In Wilson v. Capital City Press, 315 So.2d 393 (La.App. 1st Cir.1975), writ denied, 320 So.2d 203 (La.1975), the material printed came from the only public record available which turned out to be erroneous. The same is true in Francois v. Capital City Press, 166 So.2d 84 (La.App. 3rd Cir.1964). Conceding also the limited privilege to publish public records is applicable here with reference to the statement summarized, this privilege is conditioned on there being no malice. Francois, 166 So.2d at 88. The trial court correctly applied the New York Times rule of actual malice to this case, Buratt obviously being a public figure. A finding that there is actual malice under the New York Times rule also removes the statement from the limited privilege status accorded by Louisiana law.