211 So.2d 122 (1968)
Dr. Alexander SAS JAWORSKY, Plaintiff-Appellee,
v.
T. W. PADFIELD, Defendant-Appellant.
No. 2248.
Court of Appeal of Louisiana, Third Circuit.
June 4, 1968.
*123 Broussard & Broussard, by Marcus A. Broussard, Jr., Abbeville, for defendant-appellant.
LeBlanc & Boudreau, by Edward F. LeBlanc, Abbeville, for plaintiff-appellee.
Before FRUGE, HOOD and CULPEPPER, JJ.
HOOD, Judge.
Plaintiff, Dr. Alexander Sas Jaworsky, instituted this action for damages allegedly sustained by him as the result of defamatory remarks made by defendant, T. W. Padfield. Judgment was rendered by the trial court in favor of plaintiff, and defendant has appealed.

Motion to Dismiss Appeal
Plaintiff-Appellee filed a motion to dismiss the appeal on the ground that it had not been timely perfected. We rendered judgment on November 21, 1967, denying that motion. Plaintiff then filed a "Motion and Application for Rehearing and/or Reconsideration of Motion to Dismiss Appeal," which we referred to the merits. *124 That motion for rehearing is now before us for decision.
Rule 11, Section 6, of the Uniform Rules of the Courts of Appeal provides that, "An application for rehearing will not be considered when the judgment of the court has merely overruled a motion to dismiss an appeal * * *" In view of that rule, we hereby deny plaintiff-appellee's motion for rehearing and/or reconsideration of our earlier judgment refusing to dismiss the appeal.

On the Merits
Dr. Sas Jaworsky, a native Ukranian, is now a naturalized American citizen. He is a doctor of veterinary medicine, and for the past ten years he has practiced his profession and has resided with his wife and their five children in the City of Abbeville, Louisiana. His wife also is a native Ukranian. Several years ago Dr. Sas Jaworsky received national recognition by winning approximately $130,000.00 on a national television program called "The $64,000 Question." On that program he displayed an exceptional knowledge of American history. Since that time he has received many honors and awards.
Plaintiff is well known in Louisiana for his outspoken opposition to communism. He has spoken to many civic clubs and to college and religious groups, principally on the subject of Americanism and anti-communism. His biography has been published in book form. During the year 1963 he was a candidate for election as a state senator from the district which comprises Vermilion and St. Mary Parishes. The election was held in December, 1963, and plaintiff was defeated.
Defendant Padfield operates a combination grocery store and nursery business in the City of Abbeville. Three witnesses called by plaintiff testified that during the latter part of October, 1963, while plaintiff was a candidate for public office, they were in defendant's store and they heard defendant Padfield make substantially the following statements: "I hope that damn Communist Dr. Sas Jaworsky loses the election. That is the way the Communists operate. They send somebody over here like him and excite the people." These witnesses testified that the above quoted statements were made in a loud and serious tone of voice and that defendant did not appear to be joking. They stated that at least six people were present when the statements were made and that all of them could hear those remarks.
A young lady named Vivian Decuire testified that on another occasion while she was in defendant's store, in December, 1963, after plaintiff had been defeated in his bid for election as state senator, Padfield made the following statement to her: "Well, I am certainly happy about one thing. That damn Communist Dr. Sas Jaworsky lost the election."
Plaintiff contends that the statements made by defendant were false and defamatory, that they were made maliciously, that they have subjected him to embarrassment, disrepute and ridicule by picturing him as one who is dishonest in private, public and professional life, that he has suffered damages because of those statements, and that he thus is entitled to recover from defendant under LSA-C.C. art. 2315.
Defendant denies that he ever made the statements which have been attributed to him. He not only denies making those statements, but he contends that he defended Dr. Sas Jaworsky on one occasion when someone else accused him of being a Communist. He testified that on November 24, 1963, one of his employees, Jeffery Harrington, made a statement to the effect that Dr. Sas Jaworsky was "nothing but a Communist sent over here to cause trouble," and that defendant Padfield thereupon remonstrated with Harrington and cautioned him against making such a statement when he did not know whether it was true. The defendant also stated that he is an ordained minister, and that he never uses the word "damn" as stated by plaintiff's witnesses.
*125 Defendant Padfield's testimony is supported by that of Harrington, who states that he, rather than defendant, had made the defamatory statements alleged to have been made by Padfield. Other witnesses called by Padfield testified that they had never heard the defendant use profanity or call anyone a "Communist" or refer to anyone in a derogatory manner.
The trial judge accepted the testimony of the witnesses called by plaintiff, and he concluded that the defendant had uttered the words attributed to him by those witnesses. The trial judge stated:
"The Court is satisfied, after carefully evaluating all of the testimony adduced in this case that the defendant made these statements in substantially the same form which was testified to by plaintiff's witnesses."
"The defendant denies making these statements. The Court was not greatly impressed with defendant's testimony or his defense as a whole. In his endeavor to present an impression of simon pure innocence, he went so far as to testify that he never discussed politics. This was not only refuted by plaintiff's witnesses but by defendant's own employees who testified in his behalf. Also, an effort was made by defendant to show that on November 24, 1963, he defended Dr. Sas Jaworsky in correcting one of his young employees who allegedly made a statement to the effect that Dr. Sas Jaworsky was a Communist. This young fellow, Jeffery Harrington (T-153 et seq.) testified that it was he, on November 24 who said that the plaintiff was a Communist and came here to cause trouble, and that plaintiff's witnesses probably made a mistake and told plaintiff that it was Padfield who made these utterances when in fact it was he, Harrington, who made same. The Court believes that this is poppycock, and that actually this alleged November 24th incident was cooked up by defendant."
The established rule is that findings of fact by the trial judge, particularly those involving the credibility of witnesses, are entitled to great weight on appeal, and that determinations of fact made by the trial judge will not be disturbed unless found to be clearly erroneous. Evers v. State Farm Mutual Automobile Insurance Company, 187 So.2d 217 (La.App. 3d Cir. 1966); Central Louisiana Electric Company v. Gamburg, 200 So.2d 733 (La.App. 3d Cir. 1967).
In the instant suit, we cannot say that the trial judge erred in accepting the testimony of the witnesses called by plaintiff, and we thus concur in his finding that defendant called plaintiff a "Communist" on the two occasions hereinabove mentioned.
The evidence establishes that plaintiff was not a Communist. It shows, on the contrary, that he has become well known throughout the state for his outspoken views against Communism. Defendant does not allege or contend that plaintiff is a Communist, and he, in fact, concedes that he is not. The statements made by defendant, therefore, to the effect that plaintiff is a Communist are false.
In Louisiana the elements of proof necessary to make defamatory words actionable are: (1) Publication, that is communication to some person other than the one defamed; (2) falsity; (3) malice, actual or implied; and (4) resulting injury. See Comment, 28 La.L.Rev. 82 (1967) and cases collected therein. We have concluded that the first two elements, publication and falsity of the defamatory words, have been established. We now turn to the question of whether the third element, that is malice, has been established.
In the recent case of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the United States Supreme Court held that the constitutional guaranties contained in the first and fourteenth amendments require that a new "federal *126 rule" be applied in actions for damages for defamation instituted by "public officials." It held that this federal rule "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with `actual malice'that is, with knowledge that it was false or with reckless disregard of whether it was false or not."
This rule has been extended to apply to "public figures," and to "government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental offices." Associated Press v. Walker, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). See also Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). The Supreme Court also has held that "The New York Times rule is not rendered inapplicable merely because an official's private reputation, as well as his public reputation, is harmed." Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). In each of the cited cases the Supreme Court reversed a judgment of a state court because the latter had not applied the above mentioned "federal rule."
In Dyer v. Davis, 189 So.2d 678 (La.App. 1st Cir. 1966, writ refused), our brothers of the First Circuit held that the New York Times rule must be applied to candidates for public office, as well as to public officials. See also Matassa v. Bel, 246 La. 294, 164 So.2d 332 (1964).
Our conclusion is that the New York Times rule must be applied in the instant suit. Plaintiff, therefore, must establish that the statement made by defendant was made with "actual malicethat is, with knowledge that it was false or with reckless disregard of whether it was false or not."
The trial judge found "that the defendant's remarks about the plaintiff were completely untrue, and were meant to harm, belittle and malign the plaintiff, with the resulting damage to plaintiff and his family, and that said utterances were coached with sufficient malice to cause the defendant to be answerable in damages."
As we have already noted, defendant acknowledges that plaintiff is not a Communist. Padfield was aware of that fact in October and in December, 1963, when he publicly stated on both occasions that plaintiff was a Communist. Defendant also knew of plaintiff's wide reputation for being very much opposed to communism. Under those circumstances, we must conclude, as did the trial court, that defendant meant to harm, belittle and malign plaintiff when he called him a Communist. We conclude that the defamatory statements made by defendant were made with "actual malice," that is, with knowledge that they were false, and that the requirements of the federal rule, as set out in the New York Times case, thus have been met.
The last issue presented relates to the damages which were sustained by plaintiff as a result of the defamatory statements made by defendant. Plaintiff testified that he has been humiliated by being called a Communist, because such an appellation pictures him as being a hypocrite or a traitor to his country, since he has made at least 2,000 public speeches denouncing communism. He stated that since these statements were made he no longer receives invitations to make public speeches, that his children have come home and related "school ground talk" about the possibility that plaintiff is a Communist, and that his veterinary practice has decreased very much.
The trial judge observed that "the appellation `Communist' carries with it contempt, vileness, Godlessness and disregard for Constitutional free government," and that "To call one a Communist, except in jest, is as bad * * * as calling one a member of the Mafia or La Cosa Nostra."
*127 In Lightfoot v. Jennings, 363 Mo. 878, 254 S.W.2d 596 (1953), the Supreme Court of Missouri said:
"The cases, almost unanimously, have held it to be libelous per se to charge a person with being a Communist, particularly when the language relied upon is an unequivocal allegation of fact which the plaintiff stamps as false. Annotation 171 A.L.R., loc. cit. 710; Utah State Farm Bureau F. v. National Farmers Union Service Corp., 10 Cir., 198 F.2d 20; Grant v. Reader's Digest Ass'n, 2 Cir., 151 F.2d 733; Ward v. League for Justice, Ohio App., 93 N.E.2d 723; Gallagher v. Chavalas, 48 Cal.App.2d 52, 119 P.2d 408."
The Supreme Court of Florida, in the case of Joopanenko v. Gavagan, 67 So.2d 434 (Fla.1953), held:
"To charge that one is a member of the Communist Party which has as its object the overthrow of the Government of the United States and of Florida by force or violence and the abolishment of free speech, free assembly and freedom of religion, which is the complete antithesis of the American constitutional form of government, and that the methods used by such Communist Party include treachery, deceit, infiltration into governmental and other institutions, espionage, sabotage, and terrorism, necessarily causes injury to the person spoken of in his social, official and business relations of life. Such words hold him up to scorn, contempt and ridicule, causing such person to be shunned by his neighbors, and in effect charges such person with being a traitor to his country and with being a member of an organization with a primary purpose of the destruction by force or violence of the very Government which protects him."
We agree that defendant's act in accusing plaintiff of being a Communist has caused him much humiliation and embarrassment. One circumstance which we have considered in determining the damages which should be awarded is the fact that plaintiff was born in a Communist controlled country, and for that reason a public statement to the effect that he is a Communist, although false, will cause some to question his loyalty to the United States. Also, plaintiff is well known throughout the state and for several years in many public speeches he has expressed his strong anti-Communist views. A statement or rumor to the effect that actually he is a Communist impugns his honesty and sincerity and exposes him to ridicule.
Although plaintiff testified that his veterinary practice has decreased since the defamatory statements were made he has produced no records or other evidence to show the extent to which his practice has been damaged. The trial judge apparently felt that plaintiff had failed to establish the damages which he sustained from loss of practice since no award was made for that item. We agree that plaintiff is not entitled to recover damages for loss of practice as a doctor of veterinary medicine.
In Kennedy v. Item Co., 213 La. 347, 34 So.2d 886 (1948), our Supreme Court recognized the difficulty encountered by the plaintiff in proving pecuniary damages sustained by him as the result of defamatory statements made concerning his character. The court held that the amount of damages to be awarded in such a case is left largely to the discretion of the courts, taking into consideration the severity of the charges, the motives of the defamer, the position of influence enjoyed by the defendant and the extent of the publicity which was given to the defamatory statements. See also Cox v. Cashio, 96 So.2d 872 (La. App. 1st Cir. 1957); Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958); Deshotel v. Thistlethwaite, 240 La. 12, 121 So.2d 222 (1960).
The trial judge concluded that plaintiff was entitled to an award of $4500.00 as damages resulting from the defamatory statements made by defendant.
*128 We have considered the awards made in other cases of this nature, and have concluded that the amount of damages awarded to the plaintiff in the instant suit is within the range of the discretion which is vested in the trial court. See LSA-C.C. art. 1934; Cormier v. Blake, 198 So.2d 139 (La.App. 3d Cir. 1967); Deshotel v. Thistlethwaite, supra; Oakes v. Alexander, 135 So.2d 513 (La.App.2d Cir. 1961, cert. denied); Madison v. Bolton, supra; Lamartiniere v. Daigrepont, 168 So.2d 370 (La.App. 3d Cir. 1964); Cox v. Cashio, supra. We, therefore, affirm the award which was made by the trial judge.
For the reasons hereinabove assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellee.
Affirmed.