FRUGÉ, Judge.
This is an appeal from a jury verdict awarding damages in the amount of $15,-000.00 for a defamation. In September, 1969, Earnest Francis signed a surety and appearance bond for Gervey Joseph LaRue, who had been charged with a violation of the “peeping tom” ordinance of the City of Lake Charles. LaRue failed to appear in the Lake Charles City Court on September 23, 1969, and a “Judgment of Appearance Bond Forfeiture Security Bond” was entered. In examining the Judgment of Appearance Bond Forfeiture, Mr. Joseph P. Goodwin, a reporter employed by the Lake Charles American Press, erroneously determined that Earnest Francis instead of La-Rue had been the defendant in the “peeping tom” case. Based upon this erroneous determination, Mr. Goodwin prepared the following news release which was printed in the September 25, 1969, issue of the Lake Charles American Press on page eight:
“PEEPING TOM BOND FORFEITED”
“A $100 cash bond forfeiture has been ordered and bench warrant issued for Earnest Francis, 290 Spencer Street, who failed to appear in City Court for arraignment on a ‘peeping tom’ charge.
“City Judge Murray Anderson took the action at the request of assistant city prosecutor Ben Short.”
On September 27, 1969, Earnest Francis contacted an attorney who, acting on behalf of the plaintiff, notified defendant of the error and requested front-page retraction of the article. This letter was dated October 2, 1969, and was received by the defendant on October 3, 1969. The defendant refused to publish a front-page retraction. On October 4, 1969, the following retraction was printed on page three of the Lake Charles American Press:
“PEEPING TOM STORY IN ERROR”
“The American Press erred September 25, when it said a $100 bond forfeiture had been ordered and a bench warrant issued for Earnest Francis, 290 Spencer Street, for a failure to appear in City Court on a ‘peeping tom’ charge.
“Francis was not the defendant, but had signed an appearance bond for Ger-vey Joseph LaRue, no age or address available, who was charged on that account.
“City Prosecutor Robert Jacques’ office dropped the ‘peeping tom’ charge against LaRue September 30 and ordered the bench warrant recalled and the bond forfeiture set aside.”
Appellant contends that we should reverse the trial judge for failure to grant a motion for mistrial after Mr. Ortega, a prospective member of the jury, during voir dire examination acknowledged that he had prejudice against the Lake Charles American Press. He stated that because of the Lake Charles American Press he had to have his name changed. He was then excused from the jury, along with another individual who also said he had prejudice against the defendant. The trial judge refused to grant a motion for mistrial, and at that time instructed the jury to disregard the statement made by Mr. Ortega. We are of the opinion that no prejudice to the defendant was caused by this remark. The instructions given by the trial court to disregard this statement were adequate to dis *75 pel any adverse influence upon the other members of the jury. LeBlanc v. Phoenix Assurance Company of New York, La.App., 158 So.2d 256; Begnaud v. Texas and New Orleans Railway Company, La.App., 136 So.2d 123.
The appellant contends that the trial judge erred in refusing to instruct the jury that the fact that one who published a libelous statement honestly believed it to be true is a factor to be considered in mitigation of damages.
The law is settled that one who publishes a libelous statement is not relieved of liability simply because he honestly believed that statement to be true when it was published. Cass v. New Orleans Times, 27 La.Ann. 214. The fact that he was in good faith and actually believed that the libelous statement was true when published, however, is a factor which may be considered in mitigation of damages. Perret v. New Orleans Times Newspaper, 25 La.Ann. 170 (1873); Gladney v. DeBretton, 218 La. 296, 49 So.2d 18 (1950); Sas Jaworsky v. Padfield, 211 So.2d 122 (La.App. 3 Cir. 1968); and 53 C.J.S. Libel and Slander § 252.
In Perret v. New Orleans Times Newspaper, supra, the court said:
“The belief at the time of publishing the falsehood that it was true can only go according to circumstances in mitigation of the offense, and not to exculpate the party.”
In Gladney v. DeBretton, supra, the court said “the described actions of plaintiff, however, are to be considered as mitigating circumstances in fixing the quantum of damages.” And, in Sas Jaworsky v. Pad-field, supra, we held that “the motives of the defamer” may be considered in determining the amount to be awarded as damages.
We believe the applicable law is correctly stated in the following excerpt from Corpus Juris Secundum:
“Defendant may show in mitigation of damages that the libel or slander was published under an honest conviction of its truth arising from probable grounds of suspicion known to him at the time of publication or that he otherwise acted in good faith and without malice.” (53 C. J.S. Libel and Slander § 252).
In this case, the source of the publication was Mr. Goodwin, an employee of the defendant. He testified that he obtained Mr. Francis’ name from the "Judgment of Appearance Bond Forfeiture Security Bond,” which was on file in the office of the clerk of the Lake Charles City Court. A copy of that judgment was filed in evidence here, and we note that at the top of that judgment, where the title of the case is given, plaintiff, Earnest Francis, is actually shown to be one of the defendants in the criminal case. A careful reading of the entire judgment reveals that Francis was really the surety on the appearance bond, rather than a defendant, but we can understand how Goodwin, or anyone else who examined the judgment briefly, might have concluded that Francis was a defendant in that case. In our opinion the evidence supports Goodwin’s testimony that he did “honestly believe that Earnest Francis was the defendant on that charge.”
Although we agree that Special Charge No. 8 requested by defendant, relating to the mitigation of damages, contains a correct statement of the law, we have concluded that the refusal of the trial judge to give that special charge did not injuriously affect the defendant. . The charge which was given emphasized the fact that the law does not permit an award of punitive damages, that no award should be made as a punishment for injuries which may have been inflicted, and that any award made in such a case must be limited to a fair compensation for the items claimed as damages. There was nothing in the charge which indicated that the jury should not consider, as a factor in mitigation of damages, the fact that the defendant honestly *76 believed the libelous statement to be true when it was published.
Plaintiff complains of the judge’s instructions to the jury that “The publication by a newspaper of an article which falsely accuses a person with having committed a criminal offense is libelous per se and the newspaper is responsible for any damages which may have been incurred by the person falsely accused.” There is no error in this instruction. While this jurisdiction has rejected common law technicalities, it does recognize that certain words are actionable per se and from the nature of this type of defamation there is a presumption of injury.
 The judge also instructed the jury that “a retraction or published correction, of such an erroneous accusation by the newspaper at a subsequent time does not relieve the newspaper of the responsibility for any damages which may have been incurred as a result of the original publication. The effectiveness, if any, of such a retraction, may be considered by the jury, however, in estimating the amount of damages incurred by the accused person.” Appellant’s contentions are that this instruction does not adequately inform the jury that they may consider the retraction as a factor in mitigation of the damages; that this instruction prevents the jury from finding that the retraction completely mitigates damages, and that the instruction as stated only permits the effects of the retraction to be considered in mitigation of damages. There is no doubt that a retraction may be considered in the mitigation of the damages, but it is not the rule that a retraction may relieve a person from the responsibilities of the wrong and the damages he has caused, the reason being as correctly stated in Perret v. New Orleans Times, supra, “Neither does the law regard the injury inflicted as being repaired by a subsequent retraction or apology by the publisher, however promptly it may be made for it is quite reasonable to infer that many may have read the libel who never saw or heard of its disavowal.” From this it is evident that it is the effects of the retraction which must be considered, as a different rule would permit the use of the retraction to absolve the defendant of all damages by merely publishing a retraction, Tresea v. Maddox, 11 La.Ann. 206, 66 Am. Dec. 198.
Defendant also contends that the award of $15,000.00 is excessive and should be reduced. The lengthy catalogue of cases of awards given for defamations offered by the appellant is commendable. However, such cases are relevant only insofar as they indicate the possibility of abuse of discretion. The facts and circum--stances of this case indicate that the jury abused its discretion in awarding the $15,-000.00 in damages.[1] Mr. Francis is the father of nine children. He has been employed by Cities Service Oil Company for 24 years, and for the last four years has done additional work on a part-time basis as an insurance agent. True, he nearly lost the agency because of the defamation but that threat was easily overcome. There is some evidence that plaintiff lost potential insurance clients and some existing accounts because of the publication, but there is also evidence that other insurance agents similarly lost business in the same period. Also, although he may have lost some potential insurance clients, the evidence shows that his overall earnings did not decrease after the libelous statement was published.
There is considerable evidence that Mr. Francis enjoyed a good reputation in the community in which he lived. There is ample evidence that plaintiff was severely aggrieved because of the highly reprehensible nature of the publication. The offensive nature of the publication cannot be denied but we think the award can be reduced, particularly since the publication *77 was solely the result of an error in reporting by the newspaper.
The award is reduced to $1,500.00 This should be a satisfactory reparation for the harm done. It is evident that the scars caused by the publication will be lasting and its ill effects hard to escape.
For the reasons assigned, the judgment appealed from is amended so as to reduce the amount of the award from $15,000.00 to $1,500.00. As thus amended, and in every other respect, the judgment appealed from is affirmed; all costs of this court are to be paid by the defendant-appellant.
Amended and affirmed.

. The author agrees that the award by the jury was excessive. On the other hand, the award in this judgment is grossly inadequate, but in the interest of dispatch of justice yields to the greater pressure of the majority of this court.