265 So.2d 206

Earnest FRANCIS

v.

LAKE CHARLES AMERICAN PRESS.

No. 51076.

Jan. 17, 1972.

On Rehearing June 29, 1972.

Rehearing Denied July 31, 1972.

Drewett & Jacques, J. Clem Drewett, Lake Charles, Louis R. Koerner, Jr., New Orleans, for plaintiff-applicant.

Jones, Kimball, Patin, Harper, Tete & Wetherill, William M. Nolen, Lake Charles, for defendant-respondent.

HAMLIN, Justice.

In the exercise of our supervisory jurisdiction we directed Certiorari to the Court of Appeal, Third Circuit, for review of its judgment which amended the judgment of the trial court (this judgment was in accordance with the jury verdict) in favor of Earnest Francis from $15,000.00, defamation damages, to $1,500.00. Art. VII, Sec. 11, La.Const. of 1921; La.App., 241 So.2d 73; 257 La. 602, 243 So.2d 272.

The facts of record disclose that at the instance of his wife, who had been prevailed upon by Mrs. Gervey Joseph LaRue, Earnest Francis signed, September, 1969, a surety appearance bond in the sum of $100.-00 for Gervey Joseph LaRue, who was charged under a Lake Charles City Ordinance with being a peeping tom—a misdemeanor.

LaRue did not appear for trial, and the following judgment was rendered by the

Lake Charles City Court, Parish of Calcasieu, Ward III, on September 23, 1969 (read and signed on September 25, 1969):

| "CITY OF LAKE CHARLES | LAKE CHARLES CITY COURT |
| VS. NO. 1852–G | PARISH OF CALCASIEU, |
| Gervey Joseph La Rue | WARD III |
| Ernest Francis | STATE OF LOUISIANA |

## JUDGMENT OF APPEARANCE BOND FORFEITURE SECURITY BOND

In the above-entitled and numbered cause, the defendant was charged by an affidavit with Peeping Tom in violation of Chapter _____, Paragraph _____ of the Code of the City of Lake Charles, 1956.

The said defendant, having been duly notified to appear in Open Court on the 23rd day of Sept., 1969, for the purpose of arraignment and/or trial, and/or fixing for trial, did fail to appear and answer when called, whereupon the City Prosecutor of the Lake Charles City Court moved that the Court forthwith render up judgment decreeing the forfeiture of the $100.00 surety appearance bond deposited with the Marshall of the City of Lake Charles by Earnest Francis—209 N. Spencer Street

IT IS ORDERED, ADJUDGED AND DECREED that the surety appearance bond of $100.00 deposited with the Marshal of the City of Lake Charles by the said Earnest Francis, be, and the same is hereby forfeited, and according-

ly there be judgment herein and the same is rendered in favor of the City of Lake Charles and against the said Gervey Joseph LaRue, defendant, and Earnest Francis, surety, jointly and in solido, together with 5% per annum interest thereon from and after the date hereof, and for all costs of these proceedings."

Joseph B. Goodwin, a court reporter for the Lake Charles American Press in 1969, covered the proceedings of both the Lake Charles City Court and the Fourteenth Judicial District Court. On September 23rd or 24th, 1969, after covering a narcotics trial in the Fourteenth Judicial District Court, Goodwin went to the City Court where he picked up the record of the above forfeiture. He testified:

"I think it was on Wednesday afternoon when I picked up on the thing. I made a check of Judge Murray Anderson's office, and I found two—let's see, I think I found one—I found this story—I found another one. I don't remember what it was. It was some minor jail sentence though, and I noticed that this bond forfeiture was in excess of $75.00, and normally our policy at the paper is that any fine or bond forfeiture or anything over $75.00 we carry a story on it; under $75.00 we don't. And so I noticed the bond forfeiture. I looked at the top and there were two names up there. Gervey LaRue and Earnest Francis, and I couldn't tell from that who

the defendant was. So I started reading down there and I came to a section of this—it's a rather complicated paper. It's very confusing at times. I came to a section where it pointed out that a bond forfeiture had been ordered of Earnest Francis at such and such an address. And so I picked this up as the peeping tom.

"Q. Did you honestly believe that Earnest Francis was the defendant on that charge when you so reported it to the paper?

"A. I honestly did."

On September 25, 1969, the following news story appeared on page 8 of the Lake Charles American Press:

"Peeping tom
bond forfeited

A $100 cash bond forfeiture has been ordered and a bench warrant issued for Earnest Francis, 290 Spencer St., who failed to appear in City Court for arraignment on a 'peeping tom' charge.

City Judge Murray Anderson took the action at the request of Assistant City Prosecutor Ben Short."

Francis, an operator for Cities Service Oil Company and an agent for Williams Life Industrial Insurance Company (this work he performed at night and on weekends), was depressed by the untrue story. He said, "I couldn't have been hurt worser than if I was shot with a shotgun." He did not contact the newspaper, and his wife, who worked, was unsuccessful in her attempt to contact the proper newspaper parties the day the story appeared. On September 27, 1969, Francis spoke with his attorney, and on October 2, 1969, J. Clem Drewett of the firm of Drewett, Jacques & Short addressed the following letter to the Lake Charles American Press:

"Gentlemen:

This is to inform you that I represent Ernest Francis relative to a newspaper article that was written about him on September 25, 1969. It was reported in your paper that a warrant was issued for Ernest Francis who failed to appear in City Court for arraignment on a 'peeping tom' charge. It appears that you have been in grave error about this through negligence of some of your personnel as Ernest Francis has never been charged on a 'peeping tom' charge. Ernest Francis did sign a bond for a man who was charged regarding such a matter and apparently your reporter did not research the matter adequately.

My client, Ernest Francis, works for Cities Service, as well as selling life insurance and he has been thoroughly embarrassed and humiliated by the said newspaper article. Also his family, including his nine children who are in school, as well as his wife, has been humiliated and made fun of by the public

in general and it is apparent that Mr. Francis is going to have a substantial loss of income in the future as a result of your newspaper article.

Our investigation indicates that this is a clear case of negligence on the part of your newspaper and that your paper should first make a front page retraction of the article as well as having either you or your insurance company enter into negotiations for a money settlement on this matter.

I am enclosing a copy of this letter for you to forward to your insurance company and would suggest that you have someone get in touch with this office immediately for further discussion of the matter.

Waiting to hear from you, I am

> Very truly yours,
>
> DREWETT, JACQUES & SHORT
>
> [Sgd] J. Clem Drewett
> _____
> J. CLEM DREWETT

JCD/sg
Enclosure"

On Saturday, October 4, 1969, after receipt of the letter, supra, the Lake Charles American Press, page 3, published the following retraction:

" 'Peeping tom'
story in error

The American Press erred Sept. 25 when it said a $100 bond forfeiture had been ordered and a bench warrant issued for Earnest Francis, 290 Spencer St., for a failure to appear in City Court on a 'peeping tom' charge.

Francis was not the defendant, but had signed an appearance bond for Gervey Joseph LaRue, no age or address available, who was charged on that count.

City Prosecutor Robert Jacques' office dropped the peeping tom charges against LaRue Sept. 30 and ordered the bench warrant recalled and the bond forfeiture set aside.

On October 21, 1969, plaintiff filed the present suit for damages in the sum of $125,000.00, alleging in part:

"6.

The aforedescribed article was printed and subsequently sold in complete error and without justification, through the negligence of LAKE CHARLES AMERICAN PRESS, INC., its agents, servants and/or employees for the following reasons, not to be exclusive:

A. Failing to make an adequate, thorough investigation before printing a news article;

B. Failing to ascertain that certain facts are true before printing same;

C. Failing to make a proper investigation before printing a news article to see

if there is any basis for said news article;

D. Failing to check a news story to find out whether or not it was true before printing the same;

E. Printing and selling a newspaper which contained a false news article without checking the correctness of the same when proper and adequate investigation would have revealed the incorrectness of the said article;

F. Failing, in general, to adhere to the average principle regarding the publishing, printing and selling of a newspaper that is generally accepted in the newspaper business.

\*     \*     \*     \*     \*     \*

### 10.

Since the printing of the aforedescribed news article on September 25, 1969, petitioner and his family have been harassed, embarrassed, and shunned by the public and their friends, has received anonymous telephone calls concerning the article, has felt lower self-esteem and [as] well as lower esteem from his friends, acquaintances and business associates in the community.

### 11.

Since the aforesaid printing of the news article on September 25, 1969, petitioner has been asked to resign from his job with Williams Industrial Life Insurance Company."

Defendant answered plaintiff's petition, averring that "the error in the news article in question was made inadvertently and innocently and not through any intentional or culpably negligent conduct on the part of defendant or anyone for whom it might be responsible." Defendant further averred that upon learning of the error in the news article, it promptly published an article correcting the same, which article was printed in a place of equal or greater prominence than the original article.

The matter was tried to a jury which returned a verdict for Francis in the sum of $15,000.00 with interest. The trial judge, as stated supra, rendered judgment in accordance with the jury verdict.

Defendant appealed, and the Court of Appeal correctly summarized the testimony of record as follows: "The facts and circumstances of this case indicate that the jury abused its discretion in awarding the $15,000.00 in damages. [The author of the opinion, stated, "The author agrees that the award by the jury was excessive. On the other hand, the award in this judgment is grossly inadequate, but in the interest of dispatch of justice yields to the greater pressure of the majority of this court."] Mr. Francis is the father of nine children. He has been employed by Cities Service

Oil Company for 24 years, and for the last four years has done additional work on a part-time basis as an insurance agent. True, he nearly lost the agency because of the defamation but that threat was easily overcome. There is some evidence that plaintiff lost potential insurance clients and some existing accounts because of the publication, but there is also evidence that other insurance agents similarly lost business in the same period. Also, although he may have lost some potential insurance clients, the evidence shows that his overall earnings did not decrease after the libelous statement was published."

The Court of Appeals concluded: "There is considerable evidence that Mr. Francis enjoyed a good reputation in the community in which he lived. There is ample evidence that plaintiff was severely aggrieved because of the highly reprehensible nature of the publication. The offensive nature of the publication cannot be denied but we think the award can be reduced, particularly since the publication was solely the result of an error in reporting by the newspaper." As stated supra, the Court of Appeal reduced the award to plaintiff to $1,-500.00, finding that sum to be satisfactory reparation for the harm done.

1. "The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has

After denial of his application for a rehearing in the Court of Appeal, plaintiff applied to this Court for the instant Certiorari. He assigned, and still assigns, four errors to the decision and judgment of the Court of Appeal; they recite in substance: (1) The Court erred under the facts of this case in re-examining the amount of a jury verdict; (2) The Court under the facts of this case erred in considering excessive the $15,000.00 judgment of the jury and in substituting therefor the grossly inadequate award of $1,500.00; (3) The Court erred in reducing the amount of the award in that it apparently did not consider all of the elements of damage properly cognizable in a defamation action; and, (4) The Court was in error in reducing the jury's award to an amount less than actual damages solely because the defamation was due to negligence and was not intentional.

Defendant did not apply for a rehearing in the Court of Appeal. However, on June 21, 1971, it filed in this Court a Motion for Summary Judgment or Other Alternative Relief. The motion was filed under LSA–C.C.P. Art. 966,[1] and for the purpose of asserting the alleged new rule of law enunciated by the United States Supreme Court in

been filed. The defendant's motion may be made at any time.

"The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affi-

the case of Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296. (Argued December 7 and 8, 1970, decided June 7, 1971.) In part, the motion averred: "The plaintiff in this case was admittedly neither a public official nor a public figure and accordingly defendant was not protected by the rule of law requiring actual malice on the part of a newspaper in stories concerning public officials or public figures as enunciated in the *New York Times* and *Walker* cases. The *Rosenbloom* case decided by the United States Supreme Court on June 7, 1971 for the first time extended this protection to newspapers in stories concerning private individuals such as the plaintiff in this case." The motion further averred: "The Constitution of the United States and particularly the first and fourteenth amendments as now interpreted by the Supreme Court of the United States prohibits an award of damages in favor of a private individual such as the plaintiff against a newspaper for alleged libel in the absence of actual knowledge that the story was false or reckless disregard of whether it was false or not, and accordingly the plaintiff is now prohibited from recovering from the defendant in this action and defendant is entitled to a summary judgment from this honorable court in favor of the

davits prior to the day of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

defendant rejecting all of plaintiff's demands with prejudice and at his cost."

Plaintiff opposes the Motion for Summary Judgment, contending that defendant failed to plead any constitutional issues in the trial court or in the Court of Appeal and is foreclosed from urging any such alleged issues in this Court. Plaintiff urges that because defendant did not apply for a rehearing in the Court of Appeal and did not apply to this Court for Certiorari, it is foreclosed from seeking affirmative relief herein or from urging error in the Court of Appeal.

The Rosenbloom case involved a distributor of nudist magazines in the Philadelphia area, who was arrested at a newsstand while distributing his magazines. Obscenity charges were preferred against him, and thereafter news stories with respect to the magazines and the arrest were newscast. A jury acquitted Rosenbloom of criminal obscenity, and he then brought suit for damages against defendant whose defense was truth and privilege. The United States Supreme Court disallowed damages, stating:

"If a matter is a subject of public or general interest, it cannot suddenly become less so merely because a private in-

any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA–C.C.P., Art. 966.

dividual is involved, or because in some sense the individual did not 'voluntarily' choose to become involved. The public's primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct, not the participant's prior anonymity or notoriety. * * * Whether the person involved is a famous large scale magazine distributor or a 'private' businessman running a corner newsstand has no relevance in ascertaining whether the public has an interest in the issue. We honor the commitment to robust debate on public issues, which is embodied in the First Amendment, by extending constitutional protection to all discussion and communication involving matters of public or general concern, without regard to whether the persons involved are famous or anonymous.

"* * *

"We thus hold that a libel action, as here, by a private individual against a licensed radio station for a defamatory falsehood in a newscast relating to his involvement in an event of public or general concern may be sustained only upon clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not. Calculated falsehood, of course, falls outside 'the fruitful exercise of the

right of free speech.' Garrison v. Louisiana, 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964)."

Initially, we shall determine whether defendant may file a motion for summary judgment, which it equates with a peremptory exception, in this Court when it neither applied for rehearing in the Court of Appeal nor applied to this Court for review. Peremptory exceptions founded on law may be pleaded in the Supreme Court. Bullock v. Bullock, 174 La. 839, 141 So. 852. An exception of no cause of action can be filed in the Court of Appeal or in the Supreme Court before final judgment. Columbia Oil Co. v. Police Jury of Natchitoches Parish, La.App., 184 So. 580. The exception of no cause of action can be filed at any stage of the proceedings; when it is filed, the plaintiff does not acquire rights which he previously did not have. Ross v. Justice, La.App., 229 So.2d 756. Exceptions of no right of action and no cause of action may be filed at any stage of the suit, even in the Supreme Court, but must be filed prior to judgment. Williams v. Missouri Pac. R. Co., La.App., 6 So.2d 79.

LSA–C.C.P. Art. 2167, Finality of Judgment, provides:

"A judgment of an appellate court becomes final and executory when the delay for applying for a rehearing has expired and no application therefor has been made.

"When an application for a rehearing has been applied for timely:

"(1) A judgment of the supreme court becomes final and executory when this application is denied; and

"(2) A judgment of a court of appeal becomes final and executory when the supreme court denies a timely application for a writ of certiorari in the case; or on the expiration of thirty days after the denial of a rehearing by the court of appeal, *if no timely application has been made to the supreme court for a writ of certiorari.*" (Emphasis supplied.)

In our determination of defendant's right to file herein for summary judgment, we have to consider whether the Court of Appeal judgment against it was a final judgment. In Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151, 153 (1971), we distinctly said:

"Further, at the time a writ of certiorari is granted, this court may itself restrict its subsequent review. When, in granting a writ of review, this court limits it to certain issues and denies it as to all other specifications of error, the court of appeal judgment is final as to the latter and cannot be reconsidered. Deposit Guaranty National Bank v. Shipp, 252 La. 745, 214 So.2d 129 (1968).

"Similarly, when (as here) both parties apply for review, this court's denial of the application of one constitutes its final

determination upon the matters included therein. This court then will not pass a second time upon these matters at the hearing on the review granted through the application of the other party. Gastauer v. Gastauer, 152 La. 958, 94 So. 897 (1922).

"Under the present circumstances, therefore, our denial of the defendant's application for certiorari constitutes a final determination by us as to the issues presented therein. * * *"

In Blades v. Southern Farm Bureau Casualty Ins., 237 La. 1, 110 So.2d 116 (1959), we held that a party who has not applied for a writ of review of a judgment of the Court of Appeal is considered as acquiescing in the judgment and cannot have it changed to the detriment of the adverse party when the case comes before this Court on a writ of review granted upon the application of the latter. (Legislatively overruled on other points. See, LSA–C.C. P. 4501.) See, McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So. 2d 183. Likewise, in Pennington v. Justiss-Mears Oil Company, 242 La. 1, 134 So.2d 53 (1961), we held that it has been held consistently that we cannot amend a judgment to the prejudice of one at whose instance a writ has been issued when the opposing litigant has failed to make application seeking such an amendment.

Under the above law and jurisprudence, we conclude that when the recited time

for applying to the Court of Appeal for rehearing passed and defendant did not apply for such rehearing, the Court of Appeal judgment against defendant became final and the property of plaintiff. Despite the ruling of the United States Supreme Court, supra, in Rosenbloom—which supports in great part defendant's contentions as to the instant award—defendant cannot now under the present facts and circumstances avail itself of the decision by means of a Motion for Summary Judgment filed herein. There is no retroactivity of Rosenbloom to these concluded procedural matters.

Lake Charles American Press, as defendant-respondent, filed a supplemental brief in this Court in which it urges that any recovery whatsoever to the plaintiff should be denied. It also reiterates many of the arguments submitted by it when the case was argued here on December 13, 1971.

Defendant states that it is aware of the rule of law, discussed supra, that a judgment of the Court of Appeal will not be modified by this Court to the benefit of the parties who did not apply for writs and to the detriment of the adverse party. It urges, however, that this Court under its equity powers may make an exception to the rule and has done so before; the case of Department of Highways v. Clemmons, 252 La. 51, 209 So.2d 18 (1968) [2] is cited in support of defendant's contention.

We do not find that Clemmons is apposite to the present matter. It had peculiar and exceptional facts and circumstances of its own, and under its unusual facts we were constrained to exercise our equity powers. Herein, because of our findings supra, we neither acquiesce in defendant's contentions nor find that this is a matter demanding exception to the extent that we should exercise our equity powers.

The case of City of New Orleans v. Grosch, La.App., 49 So.2d 435, La.App., 49 So.2d 867,[3] cited by counsel for defendant, is not apposite to this case. That case

---

[2]. "Where Court of Appeal ruled that landowners were entitled to recover approximately $119,000 from department of highways and highway contractor and contractor's surety for activities for which under contract the department was ultimately liable, and contractor and its surety failed to apply for a rehearing in that court, and landowners sought to enforce judgment on theory that it was final as to contractor and surety, and on certiorari by the department, the Supreme Court ruled that landowners were only entitled to recover approximately $25,000, the Supreme Court under its equity jurisdiction would direct district court to enjoin enforcement of money judgment rendered by the Court of Appeal." Syllabus #2 from Department of Highways v. Clemmons, 252 La. 51, 209 So.2d 18, 19 (1968).

[3]. "The City of New Orleans and others brought suit against John J. Grosch, Sr., Criminal Sheriff of the Parish of Orleans, and his Chief Deputy to enjoin them from interfering with the Police Department of the City of New Orleans in operation of a 'Central Lockup' in building, and the defendants, in reconvention, prayed

involved a constitutional amendment which had not been ratified at the time of trial in the district court; the case was remanded to the district court by the Court of Appeal for consideration of constitutional issues. Herein, as stated supra, we are concerned with a United States Supreme Court decision, Rosenbloom, rendered after Francis had become the owner of the Court of Appeal judgment; therefore, there is a finality in this case which did not exist in the Grosch matter.

In supplemental brief, defendant further contends, "In the alternative, this Court should remand this case to the district court with instructions for the trial judge to consider a motion for summary judgment in favor of defendant denying any relief whatsoever to the plaintiff on its merits." Under our findings supra and infra, this case neither demands nor merits a remand to the trial court for its consideration of defendant's motion for summary judgment.

that writ of mandamus issue. The Civil District Court for the Parish of New Orleans, Division 'C', No. 299,724, Louis H. Yarrut, J., rendered a judgment adverse to plaintiffs, and they appealed. The Court of Appeal, Janvier, J., held that as plaintiffs had no opportunity to present in the Civil District Court their contention that certain act violated constitutional provision adopted after trial in the Civil District Court, the case should be remanded for determination of the constitutional question." Resumé by West Publishing Co., City of New Orleans v. Grosch, La.App., 49 So.2d 435.

" * * * On application for rehearing, McBride, Jr., held that all the court

We must, however, take cognizance of Rosenbloom insofar as it affects plaintiff's application for an increase in the award to him by the Court of Appeal. We must also determine the correctness of the errors, supra, assigned by plaintiff to the Court of Appeal judgment in the light of Rosenbloom. We find that the erroneous reporting of Joseph B. Goodwin, reporter for defendant, was an honest mistake; we likewise find that plaintiff has been exonerated as a "peeping tom," although he and his family suffered humiliation and some loss of income. At the time Goodwin reported the news story, he did not know that his reporting was false; he exercised no reckless disregard for its falsity vel non. His uncontradicted testimony, supra, supports these findings.

We find that the matter reported by Goodwin was one of public concern and general community interest, although it involved a private citizen. It was a matter

intended to do originally and all that they did do was order the case remanded in order that the contention that Act No. 23 of the Second Extraordinary Session of 1950 was unconstitutional could be considered, and since court had no intention of expressing either approval or disapproval of findings of district court on first trial original decree would be amended so that the judgment would be set aside and the matter remanded for further proceeding.

"Decree amended with reasons. Rehearing refused." Resumé by West Publishing Co., City of New Orleans v. Grosch, La.App., 49 So.2d 867.

protected by the First Amendment to the United States Constitution. Rosenbloom v. Metromedia, supra. Therefore, since the judgment against the Lake Charles American Press is final, as found supra, we are constrained to affirm the judgment of the Court of Appeal awarding plaintiff the sum of $1,500.00.

For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, is affirmed. Defendant's Motion for Summary Judgment is denied. All costs of this Court are to be borne equally between plaintiff and defendant.

DIXON, J., concurs.

BARHAM, Justice (concurring in the decree).

It is my view that the Court of Appeal opinion was legally correct. The majority has committed error in relying on Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296, as being dispositive of the case at hand. Because of the far-reaching effects which can flow from the Rosenbloom case, that holding should be very strictly limited in application. In our case the libel complained of was the flagrant, negligent reporting that this plaintiff was charged with a crime when plaintiff was in fact not involved in any criminal activity. Since crime is a mat-

ter of public interest, Rosenbloom might be extended to cover the situations where false information is distributed about one who is actually associated with the criminal activity. But the Rosenbloom holding cannot protect those who falsely report that someone in no way connected with criminal activity did commit a crime, for this would tear down the last vestige of protection from libel. I am of the opinion that proof of actual malice was unnecessary under the facts of the instant case.

I therefore respectfully concur in the decree only.

## ON REHEARING

SANDERS, Justice.

We granted a rehearing to reconsider our holding that the United States Supreme Court decision in Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) barred plaintiff's recovery. We were concerned with plaintiff's forceful contention that our broad interpretation of that decision stripped private citizens of substantially all redress for public defamation.

The salient facts may be briefly summarized. As an accommodation, Earnest Francis signed an appearance bond of $100.-00 for Gervey Joseph LaRue, charged with a "peeping tom" misdemeanor under a City of Lake Charles ordinance. Through no

fault of Francis, LaRue failed to appear for arraignment. On September 23, 1969, the City Court rendered the following judgment forfeiting the bond:

"CITY OF LAKE CHARLES     LAKE CHARLES CITY COURT
VS. NO. 1852–G     PARISH OF CALCASIEU,
Gervey Joseph La Rue     WARD III
Ernest Francis     STATE OF LOUISIANA

"JUDGMENT OF APPEARANCE BOND FORFEITURE
SECURITY BOND

"In the above-entitled and numbered cause, the defendant was charged by an affidavit with Peeping Tom in violation of Chapter _____, Paragraph _____ of the Code of the City of Lake Charles, 1956.

"The said defendant, having been duly notified to appear in Open Court on the 23rd day of Sept., 1969, for the purpose of arraignment and/or trial, and/or fixing for trial, did fail to appear and answer when called, whereupon the City Prosecutor of the Lake Charles City Court moved that the Court forthwith render up judgment decreeing the forfeiture of the $100.00 surety appearance bond deposited with the Marshall of the City of Lake Charles by Earnest Francis – 209 N. Spencer Street.

"IT IS ORDERED, ADJUDGED AND DECREED that the surety appearance bond of $100.00 deposited with the Marshal of the City of Lake Charles by the said Earnest Francis, be, and the same is hereby forfeited, and accordingly there be judgment herein and the same is rendered in favor of the City of Lake Charles and against the said Gervey Joseph LaRue, defendant, and Earnest Francis, surety, jointly and in solido, together with 5% per annum interest thereon from and after the date hereof, and for all costs of these proceedings."

On September 25, 1969, the following news story appeared in the Lake Charles American Press, a daily newspaper having a circulation of about 35,000:

"PEEPING TOM BOND
FORFEITED"

"A $100 cash bond forfeiture has been ordered and bench warrant issued for Earnest Francis, 290 Spencer Street, who failed to appear in City Court for arraignment on a 'peeping tom' charge.

"City Judge Murray Anderson took the action at the request of assistant city prosecutor Ben Short."

After unsuccessful efforts to contact the proper newspaper official on the day the story appeared, Francis retained an attorney. The attorney wrote the newspaper publisher requesting a retraction and the payment of damages.

In its issue of October 4, 1969, the Lake Charles American Press published the following retraction:

"PEEPING TOM STORY
IN ERROR"

"The American Press erred September 25, when it said a $100 bond forfeiture had been ordered and a bench warrant issued for Earnest Francis, 290 Spencer Street, for a failure to appear in City Court on a 'peeping tom' charge.

"Francis was not the defendant, but had signed an appearance bond for Gervey Joseph LaRue, no age or address available, who was charged on that account.

"City Prosecutor Robert Jacques' office dropped the 'peeping tom' charge against LaRue September 30 and ordered the bench warrant recalled and the bond forfeiture set aside."

On October 21, 1969, the plaintiff brought the present action for damages. After hearing the evidence, the jury returned a verdict for plaintiff in the sum of $15,000.-00. The Court of Appeal reduced the award to $1500.00. See 241 So.2d 73. On plaintiff's application, complaining of the reduction of the award, we granted certiorari. 257 La. 602, 243 So.2d 272.

The threshold question is whether The Lake Charles American Press is entitled to the constitutional privilege that sanctions recovery for libel only when the falsehood is published with actual malice, that is, with knowledge that it is false or with reckless disregard of whether it is false or not.

The constitutional privilege was first announced in the landmark case of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), as to publications concerning public officials. There the United States Supreme Court stated:

"The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

In 1966, the United States Supreme Court extended the constitutional privilege to publications concerning public figures. Thus, those who thrust themselves into the public limelight have no redress for libel without proof of actual malice. See Curtis Publishing Co. v. Butts (Associated Press v. Walker), 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); Walker v. Associated Press, 251 La. 772, 206 So.2d 489 (1968).

On June 7, 1971, after this Court had assumed jurisdiction of the present case, the United States Supreme Court handed down its decision in Rosenbloom v. Metromedia, supra, extending the constitutional privilege to publications about a private individual's involvement in an event or issue of wide public interest, though the individual is nei-

ther a public official nor a public figure. The United States Supreme Court held:

"If a matter is a subject of public or general interest, it cannot suddenly become less so merely because a private individual is involved, or because in some sense the individual did not 'voluntarily' choose to become involved. The public's primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct, not the participant's prior anonymity or notoriety. The present case illustrates the point. The community has a vital interest in the proper enforcement of its criminal laws, particularly in an area such as obscenity where a number of highly important values are potentially in conflict: the public has an interest both in seeing that the criminal law is adequately enforced and in assuring that the law is not used unconstitutionally to suppress free expression. Whether the person involved is a famous large-scale magazine distributor or a 'private' businessman running a corner newsstand has no relevance in ascertaining whether the public has an interest in the issue. We honor the commitment to robust debate on public issues, which is embodied in the First Amendment, by extending constitutional protection to all discussion and communication involving matters of public or general concern, without regard to whether the persons involved are famous or anonymous. . . . We thus hold that a libel action, as here, by a private individual against a licensed radio station for a defamatory falsehood in a newscast relating to his involvement in an event of public or general concern may be sustained only upon clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not."

Plaintiff contends that the newspaper may not rely upon Rosenbloom v. Metromedia, because it did not plead the constitutional privilege in the lower courts and because the decision is not retroactive.

■ Both of these objections are unsound. Defendant pleaded in its answer that the error was made innocently, without intent or culpable negligence. Immediately after the Rosenbloom decision, the defendant filed a motion in this Court formally asserting its rights under that decision. We can require no more.

In Curtis Publishing Co. v. Butts, supra, the United States Supreme Court rejected an identical contention, holding:

"As our dispositions of Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed. 2d 597, and other cases involving constitutional questions indicate, the mere failure to interpose such a defense prior to the announcement of a decision which

might support it cannot prevent a litigant from later invoking such a ground."

These First Amendment decisions have been applied retroactively to pending cases and to pre-decision publications. See Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); Time, Inc. v. Johnston, 448 F.2d 378 (U.S. 4th Cir. 1971); Cerrito v. Time, Inc., 449 F.2d 306 (U.S. 9th Cir.1971).

We conclude, therefore, that the constitutional privilege must be considered in arriving at a proper disposition of the present case.

Plaintiff's assertion that the present case is factually and legally distinguishable from Rosenbloom v. Metromedia, raises serious questions about the impact of that decision on the right of a private citizen to protect his reputation from defamatory falsehood.

█ The decision, in our opinion, does not mean that the First Amendment proscribes all defamation awards to private citizens. It does mean that when the publication relates to a private individual's involvement in an event of public or general concern, actual malice must be proved as a basis for recovery.[1]

█ The critical question here is whether plaintiff was involved in an event of public or general interest within the meaning of the constitutional pronouncement. We think not.

Plaintiff signed a small appearance bond in a misdemeanor case. Standing as a surety in such a case is citizen-action that the law views with favor. It is not, however, in defamation law, an event of general or public concern.

The only event of general concern here was the failure of the charged defendant to appear in court for his arraignment. The plaintiff was in no way involved in this dereliction. It is true that the news release identified him as the person who failed to appear to answer for his crime. The publisher, however, cannot build a privilege by joining a private individual with an event of public interest when there is no factual connection between the two. For this Court to validate a purely artificial connection would allow an offender to freely pierce the legal shield against defamation.

In Rosenbloom v. Metromedia, supra, the police arrested the plaintiff for distributing obscene magazines. The defendant's newscast related to this event.

---

1. The language throughout the decision emphasizes *involvement* in an event or issue of general public concern. For example, "relating to his involvement in an event of public or general concern" 403 U.S. at 52, 91 S.Ct. at 1824; "[P]olice arrest of a person for distributing allegedly obscene magazines clearly constitutes an issue of public or general interest." 403 U.S. at 45, 91 S.Ct. at 1820; "[B]ecause a private individual is involved" 403 U.S. at 43, 91 S.Ct. at 1819.

The United States Supreme Court concluded:

"[P]olice arrest of a person for distributing allegedly obscene magazines clearly constitutes an issue of public or general interest." 403 U.S. at 45, 91 S.Ct. at 1820.

The keystone of the privilege is actual involvement, not the unsupported association of a name and an event. We hold that the constitutional privilege is unavailable in the present case.

■ Having concluded that the privilege is unavailable, we consider the complaint that brought the case to this Court: that the Court of Appeal erred in reducing the jury award from $15,000.00 to $1500.00.[2]

■ Plaintiff Francis, a 45-year-old married man, lives in Lake Charles and has a good reputation in the community. He has nine children. For 24 years, he has been employed by Cities Service Oil Company. For the past four years, he has also worked part-time as an insurance agent. As a result of the news release, he received a notice of termination from the insurance company. After the company verified the facts, it withdrew the notice. The record reflects that the publicity had a short-term chilling effect on his insurance

business. Additionally, he suffered considerable embarrassment and mental distress from the offensive publication.

In reducing the award, the Court of Appeal stated:

"The offensive nature of the publication cannot be denied but we think the award can be reduced, particularly since the publication was solely the result of an error in reporting by the newspaper.

"The award is reduced to $1,500.00. This should be a satisfactory reparation for the harm done. It is evident that the scars caused by the publication will be lasting and its ill effects hard to escape."

Article 1934(3) of the Louisiana Civil Code provides:

•    •    •    •    •    •

"In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, . . ."

In a series of decisions beginning in 1963, we undertook to emphasize the vitality of that article in the review of damage awards. See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indemnity Company of Omaha, Neb., 246 La.

2. In its rehearing brief, Lake Charles American Press contends that plaintiff has acquiesced in the Court of Appeal judgment by accepting a check for the amount that court awarded and as to which defendant made no application to this Court for review. This contention is

obviously without merit. See LSA–C.C. P. Art. 2085; State ex rel. Parish of Plaquemines v. Baynard, 204 La. 834, 16 So.2d 451 (1943); Foster & Glassell Co. v. Harrison, 173 La. 550, 138 So. 99 (1931).

963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971).

In Miller v. Thomas, supra, we summarized the jurisprudence as follows:

"From these decisions, two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the 'much discretion' accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity."

Both parties cite numerous cases in which courts have made awards in defamation actions. Among the more recent are Greenberg v. DeSalvo, 254 La. 1019, 229 So.2d 83 (1969), award: $4500.00; Thompson v. St. Amant, 250 La. 405, 196 So.2d 255 (1967), award: $5000.00; Kennedy v. Item Co., 213 La. 347, 34 So.2d 886 (1948), award: $7500.-00; Sas Jaworsky v. Padfield, La.App., 211 So.2d 122 (1968), award: $45000.00. The cases cited, however, are based upon widely differing circumstances and provide little guidance.

Quite clearly, plaintiff's reputation was marred by the news release stating that he had failed to appear in court on a charge that connotes a repulsive abnormality. The newspaper, however, promptly published a retraction.

It is well established that a retraction does not exonerate a publisher from liability for defamation. The retraction may never come to the attention of all those who have acquired knowledge of the defamatory publication. It is equally well established, however, that a retraction is a mitigating factor to be considered in fixing damages. Cass v. New Orleans Times, 27 La.Ann. 214 (1875); Tresca v. Maddox, 11 La.Ann. 206 (1856); 50 Am.Jur.2d, Libel and Slander, § 375, p. 899.

With a keen awareness that libel is insusceptible of monetary approximation, we have concluded that the jury abused its discretion. As correctly appraised by a member of the Court of Appeal, the high jury award is the product of errant discretion, but the Court of Appeal award is grossly inadequate. An award of $8000.00 will bring the damages within a reasonable range. Accordingly, we fix the award in that amount.

For the reasons assigned, the judgment of the Court of Appeal is amended and judgment is rendered in favor of plaintiff, Earnest Francis, and against the defendant, Lake Charles American Press, in the sum of $8000.00 with legal interest thereon from judicial demand until paid and all costs of these proceedings, subject to a credit for any sum previously paid on the Court of Appeal judgment.

## ON REHEARING

McCALEB, Chief Justice (dissenting).

I disagree with the premise on which the majority opinion is founded.

Initially, I fail to see any difference factually for the asserted distinction between this case and Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), where the Supreme Court extended the constitutional privilege of the First Amendment to publications regarding a private individual's involvement in an event or issue of wide public interest. In that case, as in this one, there was no doubt that the libel was published without actual malice—that is, without knowledge of its falsity or with reckless disregard of whether it was false or not. Yet, the majority refuses to apply the New York Times-Sullivan rule on the basis that Rosenbloom was an obscenity case, whereas here the publication is declared to be of an event of no public interest, i. e., simply the forfeiture of a small appearance bond in a misdemeanor case.

This view overlooks the fact that all court proceedings involving enforcement of our criminal laws to be matters of public concern and interest. More importantly, the conclusion reached gives no consideration to the fact that the nature of the case in which the bond was forfeited—a peeping tom case—was a matter of public concern and interest, involving prosecution under a law designed to curb violations of the right of privacy by trespass. Indeed, it was for this reason that plaintiff allegedly suffered damages; it was not because it was stated erroneously that his small appearance bond was forfeited in a misdemeanor case; it was because of the false statement that he failed to appear for trial on a charge of being a peeping tom.

Moreover, when plaintiff herein became the bondsman to secure the presence for trial of a person charged with a criminal offense, he was voluntarily performing a public act. I can think of hardly any function more important in the administration of criminal justice, or of more public concern, than that involved in compelling the presence of an accused at his trial. And, in my opinion, it is of no less importance and of general concern because the criminal charge involved in only a misdemeanor. Manifestly, under the facts of this case, the inadvertently inaccurate publication occurred directly as a result of this voluntary involvement of plaintiff in a matter impressed with great public interest. For this reason the Rosenbloom facts are not distinguishable.

I respectfully dissent.

HAMLIN, J., dissents, adhering to the views expressed with original opinion and concurring in the dissent of McCALEB, C. J.