**Leon R. BELLIS, Plaintiff,**

v.

**The TIMES-PICAYUNE, Defendant.**

**Civ. A. No. 9611.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 20, 1964.

Thomas J. Toranto, Jr., New Orleans, La., for plaintiff.

Phelps, Dunbar, Marks, Claverie & Sims, Peter G. Burke, Ashton Phelps, New Orleans La., for defendant.

AINSWORTH, District Judge:

This is a diversity action by a citizen of Illinois (who formerly resided in Louisiana) to recover damages for an alleged libel published by The Times-Picayune, a large daily morning newspaper in New Orleans. On December 17, 1958, the defendant published an article in its newspaper titled "Orleans Grand Juror Dropped" followed by the subheading, "Burglary Ring Probe Apparently Begun." [1] The proceedings occurring before the Orleans Parish Grand Jury on the date prior to the publication are recounted in the article, and references are made to plaintiff in connection with his

---

1. The pertinent provisions of the newspaper publication are quoted verbatim, as follows:

> "ORLEANS GRAND JUROR
> DROPPED
> "Burglary Ring Probe Apparently
> Begun
>
> "An Orleans parish grand juror was discharged Tuesday and the jury apparently began an investigation into a local burglary ring that reportedly stole more than $200,000 worth of property.
>
> "Discharged for 'chronic and continued absence' from grand jury sessions was Leon R. Bellis, diamond importer and wholesaler.
>
> "Judge Shirley G. Wemberly ordered him discharged after 'all efforts to locate (Bellis) and to ascertain his reasons for his continued absence from the sessions of the said grand jury (were) without avail.'
>
> "Burglery Ring Probe
> "Bellis resides at 4634 Gawain Dr. and has his office in the Maison Blanche building. He missed the Nov. 5, Nov. 25, Dec. 9 and Tuesday sessions of the jury. He was sworn in as one of the 12 grand jurors Sept. 2 by Judge Wimberly.
>
> "The jury was believed to have begun an investigation into the burglary ring which stole property valued at more than $200,000 from uptown homes during the past year.
>
> "Jury foreman Frederick Hunter Collins Jr. refused to comment.
>
> "Maj. William McNamara, chief of detectives, and Det. John Meredith, who handled the investigation of the burglary ring, went to the grand jury room after 1 p. m.
>
> "Maj. McNamara, however, was the only one of the two who appeared before the jury. He (here appears a photograph of plaintiff) spent about 10 minutes in the grand jury room.
>
> "Suspect Fails To Show
> "An attempt to have one of those arrested in connection with the alleged burglaries appear before the jury failed because he was free on bond and not in parish prison as believed.
>
> "It was not learned if others connected with the ring appeared before the jury.
>
> "Fail To Locate Bellis
> "Bellis is the son-in-law of Jake Aronowitz, investigator on the staff of district attorney Richard A. Dowling.
>
> "Mrs. Bobbye A. Bellis has filed a separation from bed and board suit in civil district court against her husband, Leon Bellis. The suit, alleging cruelty, was filed in November. It was reported that civil deputies had not ben able to locate Bellis to serve him with a summons.
>
> "Judge Wimberly said under the law, a grand juror could be discharged for cause by a judge. The discharged juror has two days in which to appeal his discharge to the state supreme court, the judge said.
>
> "After the two days, the judge can appoint someone to fill the vacancy on the jury. The vacancy can be filled from the list of eligible grand jurors or it could be filled from the list of petit purors, the judge said."

being discharged as a member thereof. A photograph of plaintiff was also published with the article.

Plaintiff alleges that the article was "intended to convey" that he "was and is guilty of being suspected of belonging to a burglary ring, refusing without cause to perform his civic duty, that he was a suspect and failed to appear for questioning before the grand jury, that he was free on bond and had been arrested in connection with the alleged burglary and of dishonesty all of which would be conduct unbecoming a person engaged in the jewelry business and to hold plaintiff in contempt in the eyes of his clients, associates, and business associates all of which he represents in a professional capacity."

The matter is before the court on motion of defendant, The Times-Picayune, for summary judgment on the ground that the pleadings and deposition of plaintiff show that defendant is entitled to judgment as a matter of law.

The facts are not in dispute. It is admitted that the article was published by the defendant. All of the facts pertaining to plaintiff which are published in the article are admitted by him in his deposition to be true. The only issue is that of an interpretation of the language of the article; that is, whether or not there is libel by inference or implication.

■ In order for plaintiff to present a cause of action it is necessary that he show that the article was defamatory. If defamatory, the presumption of falsity and malice would attach and the burden of proving the truth of the defamatory statement would be upon defendant. Giordano v. Tullier, La.App., 4 Cir., 139 So.2d 15 (1962); Cadro v. Plaquemines Gazette, 202 La. 1, 11 So.2d 10 (1942). But the necessary premise, that the article is defamatory per se, is missing. Even conceding the possibility of defamatory statements for the sake of argument, the defendant's burden of proving the truth of the statements in the article pertaining to plaintiff has been abundantly met by the admissions of plaintiff in his deposition. In Louisiana truth is a defense in an action for libel and may be pleaded in justification of the publication. LSA–R.S. 13:3602. Plaintiff himself does not question the truth of any portion of the article. It is the implication of statements in the article which refer to the investigation of the burglary ring, which plaintiff apparently believes imputes dishonesty to him, and about which he complains.

Mulina v. Item Co., 217 La. 842, 47 So.2d 560 (1950), is a Louisiana case involving an alleged libel by implication and similar to this one factually. However, the possibility of libel by implication was much stronger there, for plaintiff was photographed with a group of criminal indictees, and the headline over the published picture read "Milk War Indictees Photographed Despite Their Threats." Beneath the picture was an explanatory note that "Some of the men indicted by the federal grand jury * * were photographed." The Supreme Court of Louisiana said that if consideration were limited "only to the pictures and headline, there may be a likelihood of a libel by implication"; however, the court felt that it was necessary to consider the publication as a whole, and on that basis denied plaintiff's claim.

By comparison to the Mulina case, supra, the factors upon which a libel could be implied, are much weaker here. The headline, "Orleans Grand Juror Dropped," and plaintiff's picture beneath which is printed his name cannot be said to be defamatory. Furthermore, a reading of the entire article discloses no defamatory or libelous statements pertaining to plaintiff; and no reasonable inferences can be drawn therefrom which would impute guilt or suspicion of plaintiff as belonging to a burglary ring, or which would depict plaintiff in any other role than the one intended—a "dropped juror" for "chronic and continued absence."

Because of the absence of any false statements in the published article it is unnecessary to discuss the well-recognized qualified privilege which exists in

favor of publication of official proceedings, requiring proof by plaintiff of actual malice. Smith v. Lyons, 142 La. 975, 77 So. 896, L.R.A.1918E, 1 (1918); Miller, Smith and Champagne v. Capital City Press, La.App., 1 Cir., 142 So.2d 462 (1962).

Summary judgment is hereby granted and the complaint is dismissed.