298 So.2d 901 (1974)
George MORESI, Sr., d/b/a Cypremort Point Campground, Plaintiff-Appellant,
v.
TECHE PUBLISHING COMPANY, INC., et al., Defendants-Appellees.
No. 4583.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1974.
Rehearing Denied September 4, 1974.
Writ Refused November 8, 1974.
*902 Alfred R. McCaleb, III, Baton Rouge, La., for plaintiff-appellant.
Caffery, Duhe & Davis by Patrick T. Caffery, New Iberia, Sessions, Fishman, Rosenson, Snellings and Boisfontaine, by Robert E. Winn, New Orleans, for defendants-appellees.
Before FRUGÉ, DOMENGEAUX and WATSON, JJ.
WATSON, Judge.
Plaintiff, George Moresi, Sr., d/b/a Cypremort Point Campground, is the owner of that campground and the lessee of Cypremort Point Beach in the St. Mary and Iberia Parishes of Louisiana. He filed this suit, contending that he was damaged by articles which appeared in the Daily Iberian newspaper on Sunday, June 24, 1973, and Friday, June 29, 1973, concerning Cypremort Point Beach and by a UPI wire service report. Made defendants were: Teche Publishing Company, Inc., d/b/a the Daily Iberian, a Louisiana Corporation; United Press International, a foreign corporation, which allegedly stated in a story on its service wires that Cypremort Point Beach would be closed on *903 July 4, 1973, because of water pollution; Woody Baird, the reporter who wrote the news articles; and M. A. Wolcott, the managing editor of the Daily Iberian.
Plaintiff stated in deposition that he had operated the Cypremort Point campground for two years commencing in May of 1972. The campground and a store operated by plaintiff are located on property leased for $3,000.00 a year from the Bourgeois family. Plaintiff also has a concession from the State of Louisiana to operate the Cypremort Point Beach. The concession from the state provides for a rental of $100.00 per month and requires plaintiff, as concessionaire, to keep the beach open to the public for twelve months a year and to operate and maintain rest rooms, utilities and a water well on the property. The concession agreement grants plaintiff the right to charge $1.00 per person per day as an entrance fee for the use of the beach. The property and facilities are under the jurisdiction of the Louisiana Parks and Recreation Commission. Plaintiff stated that he had spent between fourteen and fifteen thousand dollars improving and cleaning up the beach. Plaintiff admitted that the articles published in the Daily Iberian on June 24 and June 29, 1973, did not defame him personally but said that they hurt his business. The portion of the article of June 24 objected to by plaintiff is worded as follows:
"Moresi, however, said that the condition of the beach is getting better and people are commenting on it to him. But now, another problem is showing itself.
"According to the Iberia Parish Health Unit, the water at the beach is polluted. A spokesman for the health unit said that they could not recommend water contact sports at the beach area." (Exhibit M-2, TR. 146).
Mr. Moresi stated in his deposition that he felt the article made it appear that he, Moresi, was saying that the water was polluted.
Mr. Moresi also complained that, as a result of a UPI wire service story, KFRA radio and KLFY, Channel 10 TV, on Monday, July 2, 1973, broadcast a story that the Cypremort Point Beach was closed indefinitely because of pollution. As a result of these reports and those carried by the Daily Iberian newspaper, Mr. Moresi stated that his business deteriorated, resulting in only six people being in his campground the 4th of July and 115 people on the beach, an incredibly small number for that holiday. Mr. Moresi contrasted his business of the previous year, his only other year of operation, as being a good crowd consisting of two or three thousand people on the beach and 50 or 60 people at the campground.
In the deposition of Woodrow Wilson Baird, Jr., or Woody Baird, a reporter for the Daily Iberian, he stated that Leonard LeBlanc, the executive editor, assigned him to do a series of articles on Cypremort Point a week or ten days before the 4th of July. He stated that Leo Thomas of the Iberia Parish Health Unit told him that there were E Coli bacteria in the water at Cypremort Point and therefore Thomas could not recommend swimming or water contact sports. On the basis of this and other information, he wrote the article of June 24 stating that the water was polluted.
In deposition, Mr. M. A. "Red" Wolcott, publisher and editor of the Daily Iberian, stated that he was in Mexico at the time the articles in question were published and was not aware that the articles were published.
A motion for summary judgment was filed on behalf of defendants, Teche Publishing Company, Inc., M. A. Wolcott and Woody Baird. Attached to the motion were the three depositions and three sworn affidavits: one, by A. Leo Thomas, Chief Sanitarian of the Iberia Parish Health Unit, stating that he had examined the June 24 and June 29 and July 3, 1973, editions of the Daily Iberian and the articles *904 therein by Woody Baird concerning coliform bacteria in the waters of Vermillion Bay off Cypremort Point and the statements in the articles that he could not recommend water contact sports represent a true and accurate representation of what he said to Woody Baird; another, by John Koury, regional engineer for the Louisiana Department of Health in the Lafayette region, stating that he had examined the edition of the Daily Iberian for July 3, 1973; and the article concerning coliform bacteria in the waters of Vermillion Bay off Cypremort Point and that the article is true and accurate to the best of his knowledge; and a third, by Ben Potier, Chief Sanitarian in the St. Mary Parish Health Unit, stating that he had read the articles in the Daily Iberian on June 24, June 29 and July 3, 1973, concerning coliform bacteria in the waters of Vermillion Bay off Cypremort Point, that tests by the St. Mary Parish Health Unit show the presence of such bacteria, that he discussed the water quality of the area with Woody Baird prior to June 29, 1973, and stated to Mr. Baird that, although the samples indicated the water would not be dangerous for swimming, he could not recommend swimming and water contact sports in Vermillion Bay at that time.
An opposition to the motion for summary judgment was filed by attorney for plaintiff, accompanied by an affidavit from Mr. Ben Potier stating that coliform bacteria are found in every natural body of water and an affidavit from Mr. Moresi stating that Mr. Baird's articles hurt his business, that the water adjacent to the beach is safe for swimming and that Mr. Baird's articles were not based on proper research.
The trial court granted the motion for summary judgment[1] on behalf of defendants, Woody Baird, M. A. Wolcott and Teche Publishing Company, Inc.
Defendant, United Press International, filed a petition in the United States District Court for the Western District of Louisiana, Lafayette division, requesting that the state court action be removed to the federal district court under the provisions of 28 U.S.C. Sec. 1446(b).
Plaintiff, George Moresi, Sr., has appealed to this court from the trial court's granting of the motion for summary judgment on behalf of the other three defendants. We affirm.
The trial court stated in its reasons for judgment that, in order to prevail in an action for defamation, plaintiff must show that: (1) the stories were untrue; (2) the stories were defamatory; (3) and the stories were written with a reckless disregard for their truth. The trial court concluded that the affidavits showed that the newspaper articles were based on facts and investigation and that nothing in the articles of June 24 or June 29 was personally defamatory, libelous or insulting to plaintiff, as he admitted in his deposition. The trial court stated that the articles were published in connection with a public beach and a public body of water and that the newspaper had a right, if not a duty to inform the public of the condition of the beach and water. The trial court found that there was no genuine issue as to material *905 fact between plaintiff and defendants.
Plaintiff has appealed to this court stating in brief that the trial court erred:
"I.... in finding that there was no genuine issue of fact as to whether or not the beach was polluted; in effect, the Court found the beach was polluted as a matter of fact, despite evidence in the record to the contrary.
"II.... in finding that there were no issue of fact as to whether the plaintiff's personal or business reputation had been injured.
"III.... in finding as a matter of law that damage to reputation is essential in a suit for defamation.
"IV.... in finding that there was no issue of fact as to whether the defamatory article had been published with knowledge that it was false or with reckless disregard for the truth."
Plaintiff contends that, even though plaintiff's personal or business reputation was not injured, he is still entitled to recover for damage to his business, defamation being a quasi offense and actionable under LSA-C.C. art. 2315. Therefore, plaintiff contends that the trial court should not have granted the motion for summary judgment, there being genuine issues of material fact and law favorable to plaintiff's position.
The decisive issue of this litigation is whether the content of the newspaper articles is defamatory, the question alluded to by the second and third specifications of error. Even if there are disputed issues of fact as to pollution (Specification I) and reckless disregard for truth (Specification IV) these are not material if the published articles are not defamatory.
"The threshold question in any defamation action is whether the words used are capable of a defamatory meaning." Kihneman v. Humble Oil & Refining Company, 312 F.Supp. 34 at 41 (E.D. La. 1970).
Therefore, it becomes necessary to define "defamation" or "defamatory statements." The Second Circuit has made the following analysis, with which we agree:
A statement is defamatory when it tends to expose a person to contempt, hatred, ridicule or obloquy; or which causes a person to be shunned or avoided; or which has a tendency to deprive him of the benefits of public confidence or injure him in his occupation; and includes almost any language which upon its face has a natural tendency to injure the person's reputation, either generally or with respect to his occupation. The intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous but from the context as well, and the true meaning must be ascertained from a consideration of all parts of the statement as well as the circumstances of its publication. The test is the effect the article is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate. Brown v. News-World Publishing Corp., 245 So.2d 430 at 432 (La.App. 2 Cir. 1971).
We have studied the newspaper articles on which plaintiff bases his claim. We have concluded that they are not defamatory; indeed, some expressions are complimentary to plaintiff. We agree with the trial court's observation that the articles are "... in no way, shape or form derogatory or uncomplimentary toward Mr. Moresi with regard to his business activities and conduct." (TR. 189).
Our conclusion, therefore, is that the articles were not defamatory, and, regardless of possible issues of fact as to non-material questions, defendants were correctly held to be entitled to summary judgment as a matter of law.
*906 Additionally we are constrained to observe, concerning the fourth specification of error (that an issue of fact exists concerning publication with reckless disregard for truth), that the articles, even though they may have occasioned plaintiff business losses, as a matter of law may fall within the privilege of fair comment. The articles did not attack plaintiff in his private character. They appear to have been published under the duty owed by newspapers to inform their readers about matters of public concern; the copious materials submitted in support of the motion for summary judgment strongly indicate this conclusion, although we prefer to base our holding on the defamation issue.
Certainly the news articles dealt with a subject of public concern. It is hard to conceive of anything more public in character than the sea and its shores, as stated by LSA-C.C. art. 450:
"Things, which are common, are those the ownership of which belongs to nobody in particular, and which all men may freely use, conformably with the use for which nature has intended them; such as air, running water, the sea and its shores."
The Louisiana Supreme Court stated in Francis v. Lake Charles American Press, 262 La. 875, 265 So.2d 206 (1972) that:
"... when the publication relates to a private individual's involvement in an event of public or general concern, actual malice must be proved as a basis for recovery." 265 So.2d 217, 218.
Therefore, it is probable that, as a matter of law, these articles relating to a matter of public interest (and plaintiff's connection with a public facility on land leased from the state) enjoy a constitutional privilege under the First Amendment to the Constitution of the United States. Even if the articles were defamatory, and we have concluded that they are not, plaintiff could not recover for any damage to his business resulting therefrom without showing that the articles were false and were printed maliciously with a reckless disregard for truth. Plaintiff has made virtually no showing in this regard in opposition to the motion. On the contrary, the affidavits, pleadings, depositions and other materials in the record suggest, on our review, a high sense of public duty on the part of the newspaper, its editor and its reporter.
We agree with the trial court that the pleadings, depositions and affidavits filed herein show that there is no real dispute between these parties as to any material fact and that defendants are entitled to a judgment as a matter of law.
Although this court has been reluctant to affirm summary judgments, preferring to allow parties their day in court, this is a case in which summary judgment is appropriate. In Brown v. News-World Publishing Corp., supra, and Mitchell v. Truck Service, Inc., 286 So.2d 112 (La.App. 4 Cir. 1973), exceptions of no cause and no right of action urged by defendants in libel suits were sustained by the trial courts and affirmed by the appellate courts. Summary judgment has been granted in libel actions in federal courts considering Louisiana cases. See Kihneman v. Humble Oil & Refining Company, supra; and Bellis v. Times-Picayune, 226 F.Supp. 552 (E.D.La. 1964).
The trial court was correct in granting defendants' motion for summary judgment. All costs are taxed against appellant.
Affirmed.
DOMENGEAUX, J., concurs in the decree.
NOTES
[1] The requirements for granting summary judgment are found in LSA-C.C.P. art. 966, which provides:

The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the day of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. As amended Acts 1966 No. 36, § 1.